Regina Rae KANE, Plaintiff,

v.

STATE OF IOWA DEPARTMENT OF HUMAN SERVICES, Defendant.

No. C 96–4006–MWB.

United States District Court, N.D. Iowa, Western Division.

Feb. 19, 1997.

---

21. $96,560.00 (fees claimed) − $19,312 (20% reduction) = $77,248.00 (fees awarded).

William Kevin Stoos, Klass, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., Sioux City, IA, for Plaintiff.

Barbara E. B. Galloway, Asst. Atty. Gen., Iowa Attorney General's Office, Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS SUPPLEMENTAL COMPLAINT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL BACKGROUND ....................1120
II. STANDARDS FOR SUMMARY JUDGMENT .............................1122
III. FINDINGS OF FACT ..............................................1123
 A. Undisputed Facts ...............................................1123
 B. Disputed Facts .................................................1124
IV. LEGAL ANALYSIS ................................................1124
 A. The State Claim And The Eleventh Amendment .........................1124
 1. The constitutional bar .........................................1124
 2. "Suit" against the "state" ......................................1126
 3. Eleventh Amendment immunity and exceptions to it ..................1127
 a. Congressional abrogation .......................................1127
 b. State waiver ..................................................1127
 i. The nature of the waiver ....................................1127
 ii. Failure to meet the "stringent" standard.......................1128
 iii. An example of an express waiver ............................1128
 4. Waiver of this case ...........................................1129
 a. The ICRA and waiver .........................................1129
 b. Accord with other precedent ...................................1130
 5. Summary......................................................1132
 B. The Title VII Claim ............................................1132
 1. Exhaustion of administrative remedies ..............................1132
 2. Timely filing .................................................1133
 a. Notice of right-to-sue from the correct agency.....................1133

b. Premature filing............................................1135
 i. Curing premature filing ...................................1136
 ii. Other authority ..........................................1136
3. The timeliness defect and cure in this case ...........................1137
 a. Subsequent amendment or "receipt"? .........................1137
 b. "Prejudice" ...............................................1138
 c. Flouting administrative relief ..................................1139
 d. Entitlement to equitable modification ...........................1139
4. Summary................................................................1140
V. CONCLUSION..............................................................1140

Can this federal court hear an employment discrimination claim by a state employee that is based on violation of a state, not a federal, civil rights act? Has the plaintiff fulfilled the administrative prerequisites for filing a lawsuit under a federal anti-discrimination statute by obtaining a right-to-sue letter from the proper federal authority and filing a timely suit thereafter? These questions involve unusual permutations on more familiar issues in employment discrimination lawsuits brought by state employees. The effect of the Eleventh Amendment to the United States Constitution upon employment discrimination suits in federal court by state employees has been considered with some regularity. Although the question of the effectiveness of the Eleventh Amendment barrier now appears settled as to federal suits based on *federal* anti-discrimination statutes, it is only comparatively rarely that courts have encountered the question of the effect of the Eleventh Amendment upon federal suits against state employers based on *state* anti-discrimination statutes. Similarly, courts often encounter questions of whether administrative remedies have been exhausted and whether federal suits are timely filed in litigation under Title VII, but only rarely have they considered the question of these prerequisites to suit in federal court where the plaintiff, a former state employee, has received right-to-sue letters from *two* federal agencies, but the defendant nonetheless asserts that suit was not timely filed in relation to either the right-to-sue letter or the alleged discrimination.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Regina R. Kane filed this lawsuit on January 18, 1996, against her former employer, the defendant Iowa Department of Human Services (IDHS). Kane alleged that she was violently sexually molested by a co-worker on December 22, 1994, while working as a clerical worker in the mailroom at the Sioux City office of the IDHS. In Count I of her complaint, Kane alleges that the IDHS violated 42 U.S.C. § 2000e–2(a)(1) by allowing a sexually hostile work environment. In Count II, Kane alleges violation of Iowa Code Ch. 216, the Iowa Civil Rights Act (ICRA), which also prohibits discrimination in employment. Kane alleges that the relief available under the ICRA is more comprehensive than that available under Title VII and is not subject to the statutory limits found in Title VII. Kane's complaint alleges that she has exhausted administrative remedies on both her state and federal claims by obtaining right-to-sue letters from the appropriate agencies.

On November 27, 1996, the IDHS moved for summary judgment on both of Kane's claims. The IDHS contends that the Eleventh Amendment to the United States Constitution bars Kane's pursuit of her state-law claim under the ICRA in this federal court. The IDHS contends further that Kane's suit on her federal claim was premature, because it was filed in advance of receiving a right-to-sue letter from the appropriate federal agency, and is now time-barred by 42 U.S.C. § 2000e–5(f)(1), because Kane has failed to cure the defect.

On January 9, 1997, Kane was granted leave to file a "Supplemental Complaint," which added no new claims, but instead added a copy of a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC), dated January 18, 1996, that was not attached to Kane's original complaint. The "Supplemental Complaint" alleges that the right-to-sue letter attached to it was sent

to the IDHS and to Kane after Kane's counsel requested such a letter from the EEOC and the EEOC employee responsible for issuing such letters returned to work after government "shutdowns." It further alleges that, although the right-to-sue letter was not attached to the original complaint, it is dated the same day Kane's complaint was filed, and thus it gave Kane the right to file the present lawsuit. The "Supplemental Complaint" further alleges that nowhere does this right-to-sue letter from the EEOC indicate that any further right-to-sue letter from any other agency was required. The "Supplemental Complaint" makes no additional prayer for relief, but states instead that it is a supplement to the original complaint and that the original complaint, including its allegations and the relief sought, is incorporated into the supplement.

On January 24, 1997, the IDHS moved to dismiss the "Supplemental Complaint" for failure to state a claim, pursuant to *Fed. R.Civ.P.* 12(b)(6). The IDHS contends that the EEOC letter of January 18, 1996, does not establish that Kane has exhausted administrative remedies or, if it does, that suit was

not timely filed. Kane has resisted both the IDHS's motion for summary judgment and its motion to dismiss.

Pursuant to the IDHS's request, the court set telephonic oral arguments on the motion for summary judgment for February 14, 1997. By subsequent order, the court combined oral arguments on the IDHS's motion for summary judgment with oral arguments on the IDHS's motion to dismiss. At the oral arguments, plaintiff Regina R. Kane was represented by counsel William Kevin Stoos of Klass, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., in Sioux City Iowa. Defendant Iowa Department of Human Services was represented by Barbara E.B. Galloway, Assistant Attorney General, of the Iowa Attorney General's Office in Des Moines, Iowa.

Before turning to a legal analysis of the motions for summary judgment and to dismiss, the court must first identify the standards for disposition of a motion for summary judgment, as well as the undisputed and disputed facts that form a background to the motions.[1]

1. The court is aware that the standards for dismissal for failure to state a claim pursuant to *Fed.R.Civ.P.* 12(b)(6) are different from the standards for summary judgment pursuant to *Fed. R.Civ.P.* 56. Unlike a summary judgment motion, which is decided on the basis of a factual record, *Fed.R.Civ.P.* 56(c), a motion to dismiss for failure to state a claim pursuant to *Fed. R.Civ.P.* 12(b)(6) requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted. *Fed.R.Civ.P.* 12(b). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.,* 872 F.2d 1373, 1376 (8th Cir.1989). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102. The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832–33, 104

L.Ed.2d 338 (1989). Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under Rule 12(b)(6) is warranted. *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir. 1982).

However, in this case, determination of the motion for summary judgment will effectively moot the motion to dismiss for failure to state a claim on the ground that the letter from the EEOC does not establish Kane's exhaustion of administrative remedies and further ground that Kane's federal claim is time-barred. These issues are also raised in the motion for summary judgment and the EEOC's purported right-to-sue letter is a part of the summary judgment record, as Plaintiff's Exhibit 5 in Support of Resistance to Summary Judgment. If the court grants the IDHS's motion for summary judgment as to the Title VII claim, it will have no need to reach the same issue under the motion to dismiss. Furthermore, if the court denies the motion for summary judgment as to the Title VII claim, on the grounds that Kane has exhausted administrative remedies and timely filed her lawsuit, then there are no additional grounds stated in the motion to dismiss requiring a different result.

Furthermore, it can come as no surprise to either party that the court would resolve the motion to dismiss on the basis of its disposition of the motion for summary judgment when the two motions raise identical issues. *Compare*

## II. STANDARDS FOR SUMMARY JUDGMENT

The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

\* \* \*

(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(a)–(c) (emphasis added); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Reliance Ins. Co. v. Shenandoah South, Inc.*, 81 F.3d 789, 791 (8th Cir.1996); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir. 1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).

Ordinarily, analysis of a motion for summary judgment focuses on whether there are genuine issues of material fact that preclude summary judgment in the movant's favor,[2] because they require submission of the case to a trier of fact. *See, e.g., Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552 (if the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law."); *Woodsmith*, 904 F.2d at 1247 (same).[3] Although Kane asserts that

*Madewell v. Downs*, 68 F.3d 1030, 1048 (8th Cir.1995) (the district court's failure to give notice of conversion of a motion to dismiss into a summary judgment motion is harmless where the nonmoving party has submitted materials outside of the pleadings in support of the motion and has had an adequate opportunity to respond to the summary judgment motion; constructive notice of the conversion is sufficient). Accordingly, the court will here consider the standards applicable to a motion for summary judgment pursuant to *Fed.R.Civ.P.* 56 and will resolve the present disputes over exhaustion of administrative remedies on the federal claim and timeliness of the federal lawsuit asserting that claim only according to Rule 56 standards.

2. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394.

3. The court has considered in some detail the standards applicable to disposition of a motion for summary judgment when factual disputes are asserted to be material, most recently in *Heather K. v. City of Mallard*, IA, 946 F.Supp. 1373, 1377–78 (N.D.Iowa 1996); *Jones Distrib. Co., Inc. v. White Consol. Indus., Inc.*, 943 F.Supp. 1445, 1452–53 (N.D.Iowa 1996); *Valentine v. American Home Shield Corp.*, 939 F.Supp. 1376,

there are genuine issues of material fact precluding summary judgment in the present case, the court finds that it is not any dispute over facts that might affect the outcome of the suit under the governing law that is dispositive of the present motion for summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394. Instead, the court finds that the motion for summary judgment can be resolved on the basis of applicable law and *undisputed* facts. Nonetheless, the court will review the parties' assertions of undisputed and disputed facts as background to its determination of the IDHS's motion.

## III. FINDINGS OF FACT

The undisputed and disputed facts asserted by the parties at this juncture do not go to the circumstances Kane alleges give rise to her discrimination claims under either state or federal law. Instead, the factual assertions go to the context and timing of Kane's filing of administrative charges, the responses obtained from administrative agencies, and the timing of the filing of her lawsuit. Thus, the parties do not presently address in their statements of fact that Kane's state and federal discrimination charges arise from an incident on December 22, 1994, in which Kane alleges that she was violently sexually molested by a co-worker while working as a clerical worker in the mailroom at the Sioux City office of the IDHS. The court recites this context for Kane's claims simply for information and does not purport to find that any facts concerning the incident on December 22, 1994, are either disputed or undisputed.

### A. Undisputed Facts

Following the incident on December 22, 1994, Kane filed an administrative charge of discrimination on February 6, 1995, with both the Iowa Civil Rights Commission and the EEOC. On December 12, 1995, Kane received a right-to-sue letter from the Iowa Civil Rights Commission. However, prior to that date, on November 9, 1995, Kane re-

ceived a notice from the EEOC stating that it had forwarded Kane's request for a right-to-sue letter to the United States Department of Justice (DOJ) and further stating that the DOJ would provide a right-to-sue letter. Complaint, Exhibit 4.

As of January 18, 1996, the date on which Kane filed her lawsuit, she had not yet received a right-to-sue letter from the DOJ, and her complaint so states. Instead, in her complaint, Kane alleges that the EEOC's letter of November 9, 1995, is "in effect" a right-to-sue letter. Complaint, ¶ 11. Furthermore, the complaint states that the lawsuit was being filed in order to avoid "prejudic[ing] her ability to bring her state law claims in this case," because Kane "would like all of her claims [to be] heard in one lawsuit." *Id.* The complaint stated that the pleadings would be supplemented "[w]hen the Department of Justice follows up on the promise of the EEOC regarding the federal RIGHT TO SUE letter." *Id.* Kane did not supplement her complaint with a copy of any right-to-sue letter from the DOJ.

Instead, Kane supplemented her complaint by leave of court on January 9, 1997, with a copy of a right-to-sue letter from the EEOC, which is dated January 18, 1996, the date on which Kane filed this federal suit. This right-to-sue letter indicates that it was "[i]ssued on request." Supplemental Complaint, Exhibit 5. The IDHS has produced as a supplemental exhibit in support of its motion for summary judgment a copy of a right-to-sue letter to Kane from the DOJ dated May 10, 1996. Defendant's Supplement To Statement Of Undisputed Fact In Support Of Motion For Summary Judgment. Along with this right-to-sue letter, the IDHS has submitted an affidavit of an assistant civil rights analyst from the employment litigation section of the civil rights division of the DOJ stating that the DOJ's right-to-sue letter was sent to Kane by certified mail on May 10, 1996, and further stating that a return receipt showing delivery to Kane was received by the DOJ. *Id.* A copy of the certified mail return receipt appended to the affidavit

1380–82 (N.D.Iowa 1996); *Hanson v. Hancock County Mem. Hosp.,* 938 F.Supp. 1419, 1425–27 (N.D.Iowa 1996); and *Coulter v. CIGNA Property*

*& Cas. Cos.,* 934 F.Supp. 1101, 1106–07 (N.D.Iowa 1996).

shows delivery to Kane in care of her counsel on May 15, 1996. *Id.*

### B. Disputed Facts

Kane's disputed facts in the main relate to the efforts of her counsel to obtain a right-to-sue letter from either the EEOC or the State of Iowa.[4] Kane asserts that her counsel had been attempting to obtain right-to-sue letters from the state and the EEOC for months prior to the filing of her complaint. She asserts further that there is a genuine issue of material fact as to the extent to which government "shutdowns" impeded her receipt of a right-to-sue letter from the proper federal agency. Kane contends that her representative was told by EEOC representatives prior to the filing of her complaint that the person at the EEOC who issued right-to-sue notices was out of the office owing to the government shutdown, but that the "EEOC would be issuing a right to sue letter to the Plaintiff." Kane contends that her efforts to obtain a right-to-sue letter from the EEOC resulted in the sending of the EEOC right-to-sue letter dated January 18, 1996, found in Plaintiff's Exhibit 5, on the very day the complaint was filed. Kane contends that she was entitled to rely on the EEOC's right-to-sue letter, and did in fact rely upon it, as authorizing her federal lawsuit. Kane contends that the IDHS also received a copy of the EEOC's right-to-sue letter. Kane does not, however, detail any efforts to obtain a right-to-sue letter from the DOJ, the entity the EEOC had previously identified, in the EEOC's letter of November 9, 1995, Plaintiff's Exhibit 4, as the agency to provide the appropriate right-to-sue letter.

Kane also contends that there is a genuine issue of material fact as to the extent to which the IDHS has been disadvantaged in any way in this case, because Kane "did everything in this case in a timely fashion" and the IDHS was never unaware of her discrimination claim. Kane points out that the IDHS received a copy of the EEOC's right-to-sue letter after the complaint was filed and was involved in workers' compensation litigation arising from the same incident for months prior to the filing of Kane's dis-crimination lawsuit. Kane also contends that there has been no abuse of the process by filing her complaint on the day the EEOC issued a right-to-sue letter.

## IV. LEGAL ANALYSIS

### A. The State Claim And The Eleventh Amendment

As its sole ground for summary judgment on Kane's claim under the ICRA, Iowa Code Ch. 216, the IDHS asserts that Eleventh Amendment immunity bars prosecution of such a claim in federal court. Kane asserts that prosecution of her state and federal claims in one court is appropriate and that courts have from time-to-time permitted prosecution of civil rights claims against a state employer in federal court.

### 1. The constitutional bar

The Eleventh Amendment to the United States Constitution provides as follows:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. CONST. Amend. XI. The Eleventh Amendment, as interpreted by the Supreme Court, is born of the recognition of the "vital role of the doctrine of sovereign immunity in our federal system":

> A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued. As Justice Marshall well has noted, "because of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of federal judicial power has long been considered to be appropriate in a case such as this." *Employees v. Missouri Dept. of Public Health and Welfare*, 411 U.S. 279, 294 [93 S.Ct. 1614, 1622–23, 36 L.Ed.2d 251] (1973) (concurring in result). Accordingly, in deciding this case we must be guided by "[t]he

---

4. Kane's statement of disputed facts is also replete with assertions concerning the legal effect of various facts, which the court will consider, as appropriate, in its legal analysis.

principles of federalism that inform Eleventh Amendment doctrine." *Hutto v. Finney,* 437 U.S. 678, 691 [98 S.Ct. 2565, 2573–74, 57 L.Ed.2d 522] (1978).

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984) (footnotes omitted; emphasis in the original). Thus, an Eleventh Amendment argument involves issues more fundamental that mere "technicalities," contrary to Kane's suggestion at oral arguments. Rather, "concern and respect for state sovereignty are implicated whenever a state is involuntarily subjected to an action, regardless of the role it is forced to play in the litigation." *Thomas v. FAG Bearings Corp.,* 50 F.3d 502, 506 (8th Cir.1995).

The Eighth Circuit Court of Appeals has observed,

Almost since its enactment, courts have struggled with the boundaries created by this Amendment. These endeavors have resulted in the creation of many legal fictions which control the Eleventh Amendment's interpretation. For example, although the Amendment's terms bar only suits against states by non-residents, an early case established that the Eleventh Amendment also prohibits suits against a state by that state's residents. *Hans v. Louisiana,* 134 U.S. 1, 15–16, 10 S.Ct. 504, 507–08, 33 L.Ed. 842 (1890). The Amendment's terms address only federal suits in law and equity, yet it has been construed to also bar certain admiralty suits. *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 683 n. 17, 102 S.Ct. 3304, 3313–14 n. 17, 73 L.Ed.2d 1057 (1982). Other cases have interpreted the Eleventh Amendment to prohibit suits against a state by both foreign nations and Indian tribes. *Monaco v. Mississippi,* 292 U.S.

313, 330, 54 S.Ct. 745, 751, 78 L.Ed. 1282 (1934); *Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135, 1141 (8th Cir. 1974).

*Thomas,* 50 F.3d at 504–05 (footnote omitted); *see also Williams v. Missouri,* 973 F.2d 599, 599–600 (8th Cir.1992) ("The Eleventh Amendment bars suits against a State by citizens of that same State in federal court," citing *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986)).[5]

Although the bar of the Eleventh Amendment to suits against the state itself " 'exists whether the relief sought is legal or equitable,' " *Williams,* 973 F.2d at 600 (quoting *Papasan,* 478 U.S. at 276, 106 S.Ct. at 2939), the Eighth Circuit Court of Appeals has noted that "[o]f course, legal fictions have also eroded Eleventh Amendment immunity by, among other things, permitting suits against state officials for injunctive and prospective relief." *Thomas,* 50 F.3d at 505 (citing *Edelman v. Jordan,* 415 U.S. 651, 663–64, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974)); *see also Glick v. Henderson,* 855 F.2d 536, 540 (8th Cir.1988) (recognizing the exception for suits against state officials for injunctive relief, citing *Pennhurst,* 465 U.S. at 104, 104 S.Ct. at 910, and *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and explaining "that this exception was based on the theory that because a state is without power to authorize a state official to act in violation of federal law, any state official taking such actions is acting beyond his official authority and is thereby 'stripped of his official or representative character,' " quoting *Pennhurst,* 465 U.S. at 104, 104 S.Ct. at 910). The "legal fiction" permitting suits against state officials for injunctive and prospective relief, notwithstanding the Eleventh Amendment, is of no assistance to Kane, however,

---

5. Commentators have not been shy about criticizing the expansion of the Eleventh Amendment in *Hans* beyond its literal terms to provide protection to states from suit by their own citizens. *See, e.g.,* Michael P. Kenny, *Sovereign Immunity And The Rule Of Law: Aspiring To A Highest-Ranked View Of The Eleventh Amendment,* Geo Mason Indep. L. Rev. 1 (1993); Suzanna Sherry, *The Eleventh Amendment And Stare Decisis: Overruling Hans v. Louisiana,* U. Chi. L. Rev. 1260 (1990); David L. Shapiro, *Wrong Turns: The Eleventh Amendment And The Pennhurst*

*Case,* 98 Harv. L. Rev. 61 (1984). This court is sympathetic to the view that the Eleventh Amendment has little to do with suits by citizens of a state against that state; however, the court is constrained by the principle of *stare decisis* to follow controlling precedent from the Supreme Court holding that the Eleventh Amendment does reach so far. This court will therefore consider whether the Eleventh Amendment bars the assertion of state-law claims by a citizen of Iowa against the state of Iowa or an Iowa state agency.

because she has sued only a state agency, not any state official.

### 2. *"Suit" against the "state"*

■ In *Thomas,* the Eighth Circuit Court of Appeals also provided an outline of the analysis to be used in interpreting the scope of Eleventh Amendment immunity:

> Given the nature of Eleventh Amendment jurisprudence, we reject a "plain words" interpretation of the Eleventh Amendment....
>
> Rather than look to the Amendment's literal terms, we will more generally examine Eleventh Amendment jurisprudence to determine precisely what qualifies as a suit against the state. " 'What is a suit? We understand it to be the prosecution, or pursuit, of some claim, demand, or request. In law language, it is the prosecution of some demand in a Court of Justice.' " *Missouri v. Fiske,* 290 U.S. 18, 26, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) (quoting *Cohens v. Virginia,* 6 Wheat. 264, 407, 5 L.Ed. 257 (1821)). A later articulation of the Eleventh Amendment's reach characterizes a suit against the state more concretely. A suit is against the state if " 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 1, 104 S.Ct. 900, 908–09 n. 11, 79 L.Ed.2d 67 (1984) (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)).

*Thomas,* 50 F.3d at 505 (footnotes omitted). Although this discussion explains what is a "suit" against the state, it does not explain the meaning of "state" within the scope of the Eleventh Amendment. The court in *Thomas* found that the parties did not dispute that a state agency could invoke the protection of the Eleventh Amendment, and the definition of "state" stated in that deci-

sion was hopelessly circular: "In the interest of simplicity, we will use the term 'state' to mean any entity which qualifies for Eleventh Amendment protection." *Thomas,* 50 F.3d at 504 n. 6. In the present case, Kane has not disputed the IDHS's right to assert Eleventh Amendment immunity on the ground that it does not fall within the meaning of "state" under the Amendment.[6] Thus, as in *Thomas,* the court could simply accept as undisputed the fact that the IDHS falls within the meaning of "state" under the Eleventh Amendment. *Id.* However, the question is readily settled, because courts have held that state agencies such as the IDHS are entitled to raise Eleventh Amendment immunity to suit in federal court. *Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 908 ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Alabama v. Pugh,* 438 U.S. 781, 781, 98 S.Ct. 3057, 3057, 57 L.Ed.2d 1114 (1978) (per curiam) (stating that "the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies," and holding that a federal court's injunction against the Alabama Board of Corrections was unconstitutional); *Egerdahl v. Hibbing Community College,* 72 F.3d 615, 619 (8th Cir. 1995) (quoting *Pennhurst,* 465 U.S. at 100, 104 S.Ct. at 907–08); *Glick,* 855 F.2d at 540 ("[A] state agency which is the sole creation of the state has no separate identity, and thus cannot be stripped of it's [sic] official character," and holding that the Eleventh Amendment barred a suit for an injunction against the Arkansas Board of Corrections).

Having concluded that the IDHS is an entity entitled to raise Eleventh Amendment immunity, it is also readily apparent, applying the standards stated in *Thomas,* that Kane's action is a "suit" within the meaning of the Eleventh Amendment. *Thomas,* 50 F.3d at 505. Kane is prosecuting a claim in this court of justice, *id.* (citing *Fiske,* 290 U.S. at 26, 54 S.Ct. at 20–21, in turn citing *Cohens,* 6 Wheat. at 407, 5 L.Ed. 257), and a

---

**6.** Had Kane done so, the definition of "state" in *Thomas* would, of course, beg the question, because the court would be called upon to decide precisely whether the IDHS is "an[ ] entity which qualifies for Eleventh Amendment protection." *See Thomas,* 50 F.3d at 504 n. 6 (offering this definition of "state" within the meaning of the Eleventh Amendment).

judgment on her ICRA claim would indeed "expend itself on the public treasury or domain, or interfere with the public administration,' or . . . the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Thomas,* 50 F.3d at 505 (quoting *Pennhurst State Sch. & Hosp.,* 465 U.S. at 101 n. 11, 104 S.Ct. at 908 n. 11, in turn quoting *Dugan,* 372 U.S. at 620, 83 S.Ct. at 1006). The court must therefore consider whether this suit against the state is barred by the Eleventh Amendment.

### 3. Eleventh Amendment immunity and exceptions to it

"When a state is directly sued in federal court, it must be dismissed from litigation upon its assertion of Eleventh Amendment immunity unless one of two well-established exceptions exists." *Barnes v. Missouri,* 960 F.2d 63, 64 (8th Cir.1992); *see also Egerdahl; Williams,* 973 F.2d at 600 (quoting *Barnes* for this proposition). Those two exceptions are "congressional abrogation" and "state waiver." *Egerdahl,* 72 F.3d at 619; *Williams,* 973 F.2d at 600; *Barnes,* 960 F.2d at 64.

#### a. Congressional abrogation

■ As to congressional abrogation, in *Pennhurst,* the Supreme Court concluded that "Congress has power with respect to rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment immunity." *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907; *see also Egerdahl,* 72 F.3d at 619 ("Congress may pass legislation under the Commerce Clause or Section 5 of the Fourteenth Amendment to override states' Eleventh Amendment Immunity," citing *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 14–23, 109 S.Ct. 2273, 2281–86, 105 L.Ed.2d 1 (1989), and *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976)); *Glick,* 855 F.2d at 540 (quoting *Pennhurst*). This exception applies only

when there is "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several states.'" *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907; *Egerdahl,* 72 F.3d at 619 ("Congress must make its intention to abrogate states' immunity 'unmistakably clear in the language of the statute,'" quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); *Glick,* 855 F.2d at 540.) However, it is not on the ground of insufficiently expressed intent that "congressional abrogation" is unavailable here. Rather, it is on the simpler ground that Kane's state-law claim is not founded on the Fourteenth Amendment (or the Commerce Clause), but on Iowa Code Ch. 216. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907.[7]

#### b. State waiver

Turning to the "state waiver" exception, the Eighth Circuit Court of Appeals has reiterated that where a state or state agency waives or intends to waive its immunity, "of course, no Eleventh Amendment problem exists." *Thomas,* 50 F.3d at 505. However, just as congressional abrogation requires unmistakable language in the federal statute, "[a]s a general matter, only unmistakable and explicit waiver of Eleventh Amendment immunity" by the state will suffice. *Id.* at 506 (citing *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 305, 110 S.Ct. 1868, 1872–73, 109 L.Ed.2d 264 (1990), *Atascadero State Hosp.,* 473 U.S. at 241, 105 S.Ct. at 3146–47, and *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360–61); *Angela R. by Hesselbein v. Clinton,* 999 F.2d 320, 325 (8th Cir.1993) ("While Eleventh Amendment immunity can be waived, such waiver must be unequivocally expressed," citing *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360–61).

■ *i. The nature of the waiver.* In order to constitute a waiver of Eleventh

---

7. Although Kane may be able to assert a claim under the Fourteenth Amendment, via Title VII, based on the identical conduct challenged in her state-law claim, that does not mean that her rights under state law are "protected by the Fourteenth Amendment," such that congressional abrogation would somehow permit her state-law claim. *Cf. Pennhurst,* 465 U.S. at 99, 104

S.Ct. at 907. It means only that the same rights that Kane asserts are protected by state law may *also* be protected by federal law. Kane cannot parlay protection of similar rights by different sovereigns into abrogation by one sovereign, the federal sovereign, of Eleventh Amendment immunity as to the other sovereign, the state, upon a *state-law* claim.

Amendment immunity by the state, a state statute " 'must specify the State's intention to subject itself to suit in federal court.' " *Angela R.*, 999 F.2d at 325 (quoting *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. at 3146–47, and also citing *Feeney*, 495 U.S. at 306–08, 110 S.Ct. at 1873–74, and *Burk v. Beene*, 948 F.2d 489, 493–94 (8th Cir. 1991)). Furthermore, the Eighth Circuit Court of Appeals has described the Supreme Court's test of waiver as "stringent." *Hankins v. Finnel*, 964 F.2d 853, 856 (8th Cir.), *cert. denied sub nom. Missouri v. Hankins*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992); *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir.1991). The waiver "must be ' "stated by the most express language," ' or, if implied, it must appear ' "by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." ' " *Hankins*, 964 F.2d at 856 (quoting *Feeney*, 495 U.S. at 305, 110 S.Ct. at 1872–73, in turn quoting *Atascadero*, 473 U.S. at 239–40, 105 S.Ct. at 3146, and *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360–61, with internal citations from that case omitted).[8]

***ii. Failure to meet the "stringent" standard.*** The Eighth Circuit Court of Appeals has been reluctant to find waivers meeting the "stringent" standard required. For example, in *Angela R.*, the Eighth Circuit Court of Appeals found that an Arkansas statute that acknowledged the pendency of the case then before the federal court nonetheless fell "considerably short of the 'unequivocal waiver' of Eleventh Amendment immunity that *Atascadero* requires." *Angela R.*, 999 F.2d at 325. The court therefore found that the Eleventh Amendment barred an action to enforce a settlement agreement in federal court. *Id.* In *Burk*, a state indemnification statute that referred to damages awards by federal courts was nonetheless read *not* to provide "a clear and unequivocal waiver of the state's Eleventh Amendment immunity." *Burk*, 948 F.2d at 493. The statute in question in *Burk* provided that

[t]he State of Arkansas shall pay actual, but not punitive, damages adjudged by a state or federal court ... against officers or employees of the State of Arkansas ... based on an act or omission by the officer or employee while acting without malice and in good faith within the course and scope of his employment and in the performance of his official duties.

Ark.Code Ann. § 21–9–203(a) (Michie 1987); *Burk*, 948 F.2d at 493 n. 3 (quoting the Arkansas statute). The court rejected the plaintiffs argument that it would be unnecessary for the legislature to provide for indemnification for liability in federal lawsuits if in fact the state had not waived its immunity to suits for damages in federal court. *Burk*, 948 F.2d at 493. The lack of unequivocal waiver in this indemnification statute was bolstered by the court's finding that another statute provided "quite explicitly, that state officials *are* entitled to immunity in ordinary circumstances." *Id.* (citing Ark.Code Ann. § 19–10–305(a) (Michie Supp.1991), with emphasis in the original). Waivers may also be "partial" rather than "general." *Hankins*, 964 F.2d at 856 (citing cases). Thus, in *Hankins*, the court found that the state had waived its immunity only as to the judgment in the case by participating in a trial of the case on the merits. *Id.* Similarly, in *Barnes*, the court found that a waiver of immunity in a Missouri statute, Mo.Rev.Stat. § 537.600, did not include the types of claims raised by the plaintiff, which were claims for violation of the First Amendment, the Fourteenth Amendment, and the First Amendment Privacy Protection Act of 1980, 42 U.S.C. § 2000aa–6(a), arising from the defendants' obtaining the plaintiff's arrest record and disseminating it to the public. *Barnes*, 960 F.2d at 65.

***iii. An example of an express waiver.*** The court therefore returns to Supreme Court precedent to identify language that would be sufficiently explicit to constitute a state's waiver of its Eleventh Amendment immunity to suits in federal court. In *Fee-*

---

8. In *Hankins*, the Eighth Circuit Court of Appeals also found that waiver could occur through conduct, such as by a general appearance in federal court and defense of a lawsuit on the merits. *Hankins*, 964 F.2d at 856. The IDHS has made no such waiver by conduct here, because it has asserted its Eleventh Amendment immunity before asserting any defense on the merits, apart from answering.

*ney,* the Court found that both New York and New Jersey had "expressly consent[ed] to suit in expansive terms" with language that the states "consent to suits, actions, or proceedings of any form or nature at law, in equity or otherwise ... against the Port of New York Authority." *Feeney,* 495 U.S. at 306, 110 S.Ct. at 1873 (citing N.J. Stat. Ann. § 32:1–157 (West 1963), and N.Y. Unconsol. Laws § 7101 (McKinney 1979)). However, the Court rejected the assertion that this expansive consent could be interpreted to encompass suit in federal court as well as state court, because "such a broadly framed provision may also reflect only a State's consent to suit in its own courts." *Id.* The Court nonetheless found an express waiver by resolving any ambiguity in the consent to suit provision by looking to the statutory venue provision. *Id.* at 307, 110 S.Ct. at 1873–74. That venue provision "expressly indicated that the States' consent to suit extends to suit in federal court," because the provision provided that " '[t]he foregoing consent [of N.J. Stat. Ann. § 32:1–157 (West 1963); N.Y Unconsol. Laws § 7101 (McKinney 1979) ] is granted on the condition that venue ... shall be laid within a county or judicial district, established by one of said States or by the United States, and situated wholly or partially within the Port of New York District.' " *Feeney,* 495 U.S. at 307, 110 S.Ct. at 1873 (quoting N.J. Stat. Ann. § 32:1–162 (West 1963); N.Y Unconsol. Laws § 7106 (McKinney 1979)). The Court found that this provision "eliminates the danger ... that federal courts may mistake a provision intended to allow suit in a State's own courts for a waiver of Eleventh Amendment Immunity." *Id.* The court rejected an argument that a venue provision could shape the Court's construction of a consent to suit provision, because the venue provision "directly indicates the extent of the States' waiver embodied in the consent provision." *Id.* Furthermore,

> The States passed the venue and consent to suit provisions as portions of the same Acts that set forth the nature, timing, and extent of the States' consent to suit. The venue provision expressly refers to and qualifies the more general consent to suit provision. Additionally, issues of venue are closely related to those concerning sov-

ereign immunity, as this Court has indicated by emphasizing that "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School and Hospital v. Halderman [Halderman],* 465 U.S., at 99 [104 S.Ct., at 907].

*Feeney,* 495 U.S. at 307–08, 110 S.Ct. at 1874.

### 4. Waiver in this case

#### a. The ICRA and waiver

■ With these decisions for guidance, the court turns to the question of whether there has been any express waiver of Eleventh Amendment immunity in the ICRA. Iowa Code § 216.2(7) does define an "employer" under the ICRA as including "the state of Iowa or any political subdivision, board, commission, department, institution, or school district thereof...." The ICRA also provides for commencement of "an action for relief in the district court" by a person aggrieved by an unfair or discriminatory practice "committed by the state or an agency or political subdivision of the state" or other employer. Iowa Code § 216.16(1). However, nowhere in the ICRA does this court find any reference to Eleventh Amendment immunity, any waiver of such immunity, or even any reference to *federal* court.

Inexplicably, neither of the parties directed the court's attention to any language of the ICRA itself in their arguments concerning whether the state of Iowa had waived its Eleventh Amendment immunity in that act. However, looking to the definitions section of the ICRA, for much the same reason the Supreme Court in *Feeney,* 495 U.S. at 307–08, 110 S.Ct. at 1873–74, looked to a venue provision as defining *where* the state intended to permit suit, this court finds that the ICRA expressly refers only to suit in a *state* court. The pertinent provision of the ICRA defines "court" as follows: " 'Court' means the district court in and for any judicial district *of the state of Iowa* or any judge of the court if the court is not in session at that time." Iowa Code § 216.2(3). Whatever implication this definition of "court" may have for pendent claims under the ICRA brought in federal court against other employers, it is clear to this court that, as to state employers,

without any reference to either Eleventh Amendment immunity or suit in *federal* court, there has been no express waiver of Eleventh Amendment immunity to suits under the ICRA against the state in federal court. *Angela R.*, 999 F.2d at 325 (the state statute "must specify the State's intention to subject itself to suit in federal court,'" quoting *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. at 3146–47, and also citing *Feeney*, 495 U.S. at 306–08, 110 S.Ct. at 1873–74, and *Burk v. Beene*, 948 F.2d 489, 493–94); *and compare Feeney*, 495 U.S. at 307, 110 S.Ct. at 1873–74 (finding an express waiver in statutes stating that "venue ... shall be laid within a county or judicial district, established by one of said States or by the United States, and situated wholly or partially within the Port of New York District").

Furthermore, to read the express waiver of sovereign immunity to suits against the state as an employer that necessarily follows from the definition of "employer" in Iowa Code § 216.2(7) to include a waiver of immunity to suit in federal court would be to commit precisely the mistake identified in *Feeney*. *Feeney*, 495 U.S. at 306, 110 S.Ct. at 1873 (rejecting the assertion that an expansive consent to suit could be interpreted to encompass suit in federal court as well as state court, because "such a broadly framed provision may also reflect only a State's consent to suit in its own courts."). The only necessary implication from Iowa's consent to be sued as an employer under the ICRA, particularly when any ambiguity is dispelled by the definition of the courts in which the state consents to be sued as *Iowa* courts, is that Iowa has consented to suit only in its own courts. *Id.* at 306–08, 110 S.Ct. at 1873–74.

### b. Accord with other precedent

The court's conclusion that the ICRA does not provide an express waiver of Eleventh Amendment immunity to suits in federal court against a state agency is in keeping with authorities from other jurisdictions. In *Van Pilsum v. Iowa State Univ. of Science and Tech.*, 863 F.Supp. 935 (S.D.Iowa 1994), a judge of our sister district held that the Iowa State Board of Regents and Iowa State University were immune to suit under Iowa

Code Ch. 216 by virtue of the Eleventh Amendment. *Van Pilsum*, 863 F.Supp. at 939–40. However, the thrust of Judge Vietor's analysis in *Van Pilsum* was directed at the question of whether the state board of regents and the university were state agencies entitled to share in the state's Eleventh Amendment immunity. *Van Pilsum*, 863 F.Supp. at 936–39. The court did not address the question of a waiver of Eleventh Amendment immunity in Iowa Code Ch. 216, which is the question now confronting this court. Although it involves a different Iowa statute, the Iowa Wage Payment Collection Act, Iowa Code Ch. 91A, another decision from our sister district is also illuminating here. In *Raper v. Iowa*, 940 F.Supp. 1421 (S.D.Iowa 1996), Judge Longstaff considered whether authorization for the Commissioner of the Iowa Department of Labor to bring an action on behalf of an employee in "any court of competent jurisdiction," Iowa Code § 91A.10(2), sufficed to waive Eleventh Amendment immunity. *Raper*, 940 F.Supp. at 1426. The court concluded that it did not, not only because the plaintiff's claim was pursuant to the Fair Labor Standards Act, not Iowa Code Ch. 91A, but because "there is no indication anywhere in Chapter 91A that a 'court of competent jurisdiction' includes a *federal* court." *Id.* (emphasis in the original). Such uncertain language therefore did not "'specify the State's intention to subject itself to suit in federal court.'" *Id.* (quoting *Feeney*, 495 U.S. at 306, 110 S.Ct. at 1873). Thus, if broad language referring to a "court of competent jurisdiction" does not include a *federal* court, it is abundantly clear that the language of Iowa Code § 216.2, which defines a "court" as a court of a *state* judicial district, certainly cannot be construed to waive Eleventh Amendment immunity to suit in federal court.

The court in *Raper* also rejected the notion that filing an answer in the litigation amounted to a waiver of Eleventh Amendment immunity. *Raper*, 940 F.Supp. at 1426. Although it identified a split in authority as to whether appearance in a suit waives the immunity, the court in *Raper* found there had been no waiver in the case before it, because the facts in the case did not present a waiver by "the most express language." *Id.* The

court found that the state had raised the Eleventh Amendment immunity argument in its first motion for summary judgment with respect to the case. *Id.* at 1427. The court found the Eleventh Amendment argument was therefore timely. *Id.* For the same reasons, this court finds that the state's Eleventh Amendment immunity argument is timely here. Although the IDHS has answered the complaint, the IDHS has raised Eleventh Amendment immunity in its first summary judgment motion directed at the complaint.

Although it involves another state's civil rights statute, nearly on point with arguments asserted here is the decision of the Sixth Circuit Court of Appeals in *Freeman v. Michigan Dep't of State*, 808 F.2d 1174 (6th Cir.1987). In *Freeman*, the court found that a state does not waive Eleventh Amendment immunity to suit on claims based on state law just because those state laws have the same purpose as Title VII and 42 U.S.C. § 1981 in prohibiting discrimination in employment. *Freeman*, 808 F.2d at 1179. This decision therefore contradicts what appears to be Kane's argument that this court should permit a suit in federal court under Iowa Code Ch. 216, because other courts have permitted suits in federal court against state employers

where the suits implicate civil rights.[9] In *Freeman*, the Sixth Circuit Court of Appeals held that "[t]he fact that Michigan seeks to prevent discrimination in the workplace by means of state law does not establish that it has agreed to become a defendant in federal court suits based on violations of either state or federal law." *Id.* The court reiterated the holding of the Supreme Court in *Edelman*, 415 U.S. at 677 n. 19, 94 S.Ct. at 1363 n. 19, and repeated above, that " 'the fact that the state has waived immunity from suit in its own courts is not a waiver of Eleventh Amendment immunity in federal courts.' " *Id.* (quoting *Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir.), *cert. denied*, 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 65 (1985), which cites *Edelman* for this proposition).

In *Schloesser v. Kansas Dep't of Health and Env't*, 766 F.Supp. 984 (D.Kan. 1991), *rev'd on other grounds*, 991 F.2d 806 (10th Cir.) (table opinion),[10] *cert. denied*, 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 255 (1993), the United States District Court for the District of Kansas rejected another argument similar to one Kane raises here. In *Schloesser*, the court found that the Eleventh Amendment barred a suit under the Kansas Act Against Discrimination (KAAD), K.S.A.

9. Each of the cases Kane cites in support of her argument that courts have permitted suits against state employers for violations of civil rights is distinguishable on the ground that the source of the rights in question was federal, not state, law. *See Greenwood v. Ross*, 778 F.2d 448, 452–54 (8th Cir.1985) (reversing the district court's determination that the University of Arkansas was immune to suit under Title VII and § 1983, in a case involving no state-law claim, on the ground that the district court had failed to make adequate findings as to whether or not the university was a separate entity, for Eleventh Amendment purposes, from the state); *Jordan v. Weaver*, 472 F.2d 985, 989–94 (7th Cir.1973) (state had consented to suit, thus waiving Eleventh Amendment immunity, by participating in a federal welfare program), *rev'd on other grounds sub nom. Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *McNeil v. McDonough*, 515 F.Supp. 113, 122 (D.N.J.1980) (in a case in which no state-law claims were asserted, the court held that the only claims for money damages that the plaintiffs could assert were those pursuant to Title VII, although other claims for injunctive relief might be permissible; there had been no congressional abrogation or waiver of Eleventh Amendment immunity as to

claims pursuant to 42 U.S.C. § 1981), *aff'd*, 648 F.2d 178 (3d Cir.1981); *Steadman v. Hundley*, 421 F.Supp. 53 (N.D.Ill.1976) (finding that the state could not raise Eleventh Amendment immunity to a Title VII suit in light of the then-recent decision in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976)). One exception is Kane's citation to *Benniefield v. Valley Barge Lines*, 472 F.Supp. 314 (S.D.Ala.1979), which Kane cites for the unremarkable proposition that waiver of Eleventh Amendment immunity may be implied. This case is distinguishable, because it simply does not involve a state civil rights statute, although it did involve a state statute, but it is unhelpful to Kane in any event, because the court found no express or implied waiver of Eleventh Amendment immunity. *Benniefield*, 472 F.Supp. at 316.

10. The text of the opinion of the Tenth Circuit Court of Appeals in *Schloesser* is available on WESTLAW at 1993 WL 113725 (10th Cir.1993). It reveals that only issues pertaining to equitable estoppel of tolling of limitations periods under the ADEA were appealed. The Tenth Circuit Court of Appeals therefore did not consider matters at issue here.

44–1001 *et seq.,* because such a claim was merely pendent to a federal claim of employment discrimination under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.,* against a state official. *Schloesser,* 766 F.Supp. at 989. Thus, this decision contradicts Kane's assertion that she may bring her ICRA claim in this litigation, simply because it is pendent to her Title VII claim. This court concludes that even if a state claim is pendent to a federal claim, the Eleventh Amendment still provides a bar to bringing the state claim in federal court. Indeed, the Sixth Circuit Court of Appeals recognized *Pennhurst* as holding that "the judge-made doctrine of pendent jurisdiction does not 'override' the Eleventh Amendment." *Freeman,* 808 F.2d at 1180 (citing *Pennhurst,* 465 U.S. at 121, 104 S.Ct. at 919). Therefore, the Sixth Circuit Court of Appeals held, and this court agrees, that "[w]hile the plaintiff's state claims could be filed in this action as pendent claims to those asserted under Title VII ..., as pendent claims they are subject to the same Eleventh Amendment limitations on relief." *Id.* Pendent jurisdiction over Kane's ICRA claims simply does not provide a way around the Eleventh Amendment bar to those claims.

### 5. Summary

The court finds that Kane may not proceed with her claim under the ICRA against the IDHS in this federal court. The Eleventh Amendment bars such a suit and the court has found neither congressional abrogation of such immunity, nor express waiver by the state of that immunity. The ICRA itself defines not only *when* the state may be sued as an employer, but *where.* According to the ICRA's definition of "court," the *where* is courts of a judicial district of the state of Iowa. Nowhere does the ICRA refer specifically to the Eleventh Amendment or suit in federal court. Furthermore, arguments that this court can entertain Kane's ICRA claim, because the ICRA prohibits similar conduct to that forbidden by federal law, or because her ICRA claim is pendent to a federal claim over which the court has jurisdiction, are untenable. The IDHS's motion for summary

judgment as to Kane's state-law claim will therefore be granted.

### B. The Title VII Claim

As grounds for summary judgment on Kane's Title VII claim, the IDHS asserts that Kane failed to exhaust her administrative remedies prior to filing this federal lawsuit and failed to cure that defect by refiling the lawsuit or filing an amended complaint once she had obtained a right-to-sue letter from the proper agency. The IDHS points out, first, that Kane's complaint acknowledges that she had not yet received a right-to-sue letter from any agency at the time of filing; second, that, pursuant to 42 U.S.C. § 2000e–5(f)(1), only such a letter from the DOJ, not the EEOC, will suffice, so that the right-to-sue letter from the EEOC mailed to, but not received, by Kane on the day she filed her lawsuit is legally insufficient; and third, that no filing was made within ninety days after Kane subsequently received a right-to-sue letter from the DOJ. Kane asserts that the IDHS is raising a "gotcha" defense, by asserting that the EEOC letter is ineffective, but, had she waited for the DOJ letter, the IDHS would then assert that she had waited too long to file suit after receiving the EEOC letter. She contends that she was entitled to rely on the EEOC right-to-sue letter as giving her leave to file her lawsuit and that she did in fact rely upon it.

### 1. Exhaustion of administrative remedies

The Eighth Circuit Court of Appeals recently discussed the administrative exhaustion requirement of Title VII:

In general, "[e]xhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir.1994) (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 180–81, 109 S.Ct. 2363, 2374–75, 105 L.Ed.2d 132 (1989)). To exhaust her remedies, a Title VII plaintiff must timely file her charges with the EEOC and

receive, from the EEOC, a "right to sue" letter. 42 U.S.C. § 2000e–5(b), (c), (e). The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim, along with allegations that are "like or reasonably related" to that claim, in federal court.

*Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir.1996). The parties do not dispute that Kane filed her administrative charge with the EEOC as required. The question is whether Kane's filing of her federal lawsuit was premature in relation to a right-to-sue letter from the appropriate agency.

### 2. Timely filing

Once a Title VII plaintiff receives notice of the right to sue, he or she has ninety days in which to file suit. 42 U.S.C. § 2000e–5(f)(1); *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir.1994). Where suit is not filed within ninety days of receiving the notice of right to sue, the claims asserted in the EEOC charge are barred by statute. *Williams,* 21 F.3d at 222. This court has recognized that such filing requirements serve an important purpose:

As the court stated in *Mohasco [Corp. v. Silver],* 447 U.S. [807,] 826, 100 S.Ct. [2486,] 2497 [65 L.Ed.2d 532 (1980)], "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Thus, time limitations such as the 90–day period mandated in § 2000e–5(f)(1) "are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 452–53 (7th Cir.1990)[, *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991)].

*Roush v. Kartridge Pak Co.,* 838 F.Supp. 1328, 1336 (S.D.Iowa 1993). The IDHS contends that Kane did not timely file her lawsuit after receiving a right-to-sue letter from the correct federal agency, which the IDHS contends is not the EEOC, but the DOJ.

### a. Notice of right-to-sue from the correct agency

In this case, the proper agency to provide Kane with a right-to-sue letter, as the IDHS argues, was the DOJ, not the EEOC. Section 2000e–5(f)(1) of Title 42 provides, in pertinent part, as follows:

In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court.... [If the charge is dismissed, no action is taken within 180 days, or the Attorney General has not filed a civil action] the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved....

42 U.S.C. § 2000e–5(f)(1). The statute thus provides for a right-to-sue letter from the DOJ, not the EEOC, in cases where the EEOC has been "unable" to obtain a conciliation agreement, which this court reads to include situations, present in this case, in which the EEOC simply has not reached the case. The conclusion that the DOJ, not the EEOC, was the proper agency to issue Kane a right-to-sue letter is confirmed by agency regulations, which provide as follows:

Notices of right-of-sue [sic] for charges against Governmental respondents. In all cases where the respondent is a government, governmental agency, or a political subdivision, *the Commission will issue the notice of right when there has been a dismissal of a charge.* The notice of right to sue will be issued in accordance with § 1601.28(e). *In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attor-*

*ney General will issue the notice of right to sue,* including the following cases:

(1) When there has been a finding of reasonable cause by the Commission, there has been a failure of conciliation, and the Attorney General has decided not to file a civil action; and

(2) *Where a charging party has requested a notice of right to sue pursuant to § 1601.28(a)(1) or (2).* In cases where a charge of discrimination results in a finding of cause in part and no cause in part, the case will be treated as a "cause" determination and will be referred to the Attorney General.

29 C.F.R. § 1601.28(d) (1991) (emphasis added).[11] There was no dismissal of Kane's charge with the EEOC; only administrative inaction. *See* 29 C.F.R. § 1601.28(d). Furthermore, Kane had requested a right-to-sue letter after the expiration of 180 days, which places the case within one of the specific examples of "all other cases" identified in the regulation. *See* 29 C.F.R. § 1601.28(d)(2). The court concludes that Kane was required to obtain a right-to-sue letter from the DOJ to fulfill her preconditions for suit.

The IDHS argues that the suit was not filed within ninety days after Kane received the right-to-sue letter from the DOJ.[12] Kane

**11.** In *Fouche v. Jekyll Island–State Park Auth.*, 713 F.2d 1518 (11th Cir.1983), the Eleventh Circuit Court of Appeals asserted that 29 C.F.R. § 1601.28(d) is "directly contradict[ory to] the statutory language of 42 U.S.C. § 2000e–5(f)(1)." *Fouche,* 713 F.2d at 1524. The court in *Fouche* read § 2000e–5(f)(1) to require that "a right-to-sue letter must be issued by the United States Attorney General because this case involves 'a government, governmental agency, or political subdivision,' " apparently suggesting that in any case involving such a respondent, the statute requires that the DOJ issue the right-to-sue letter. *Fouche,* 713 F.2d at 1524. However, the statute appears to place limits on when the DOJ is the proper agency, specifically, when the EEOC has failed to obtain a conciliation agreement. *See* 42 U.S.C. § 2000e–5(f)(1). The question, which this court need not decide, is whether the language of the regulation stating that the EEOC will issue the right-to-sue letter "when there has been a dismissal of a charge" is contradictory to the statutory language that the EEOC will refer the charge to the DOJ in cases involving governmental respondents "if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission." 42 U.S.C. § 2000e–5(f)(1). This court does not see a contradiction, because the EEOC would not seek a conciliation agreement at all, and hence would never refer the case to the DOJ, if the EEOC never commenced an investigation, or found no probable or reasonable cause after investigation and dismissed the charge. Thus, where there was a dismissal of the charge by the EEOC, it would follow that the EEOC, not the DOJ, would issue the right-to-sue letter. However, the decision in *Fouche* does not make clear whether the plaintiffs Title VII claim was dismissed by the EEOC, or whether the DOJ had in fact received a referral of the case from the EEOC after a finding by the EEOC of reasonable cause and a failure of conciliation. In the latter circumstances, it would be incorrect for the DOJ to assert that the EEOC was required to issue the right-to-sue letter. *Id.*

**12.** The IDHS, among other things, asserts that the EEOC's right-to-sue letter cannot be considered effective, because Kane, as a state governmental employee, was required to obtain a right-to-sue letter from the DOJ, and was so informed by the EEOC. The IDHS is correct that the proper agency to issue a right-to-sue letter in Kane's circumstances was the DOJ, not the EEOC. 42 U.S.C. § 2000e–5(f)(1). However, whether or not this court can suppose that the IDHS would have raised what Kane calls the "gotcha" defense, it is clear that, had Kane not filed suit on the basis of the EEOC right-to-sue letter she had been promised would be sent, but had instead waited for the proper right-to-sue letter from the DOJ, her delay could have been fatal to her Title VII claims. In *Dougherty v. Barry,* 869 F.2d 605 (D.C.Cir.1989), the District of Columbia Circuit Court of Appeals held that a second notice of the right to sue, issued by the DOJ after the EEOC had already reconsidered the plaintiffs' case and found probable cause, did not revoke the first notice of the plaintiffs' right to sue issued by the EEOC, and did not revive the plaintiffs' right to sue. *Dougherty,* 869 F.2d at 610–12 (also recognizing that there is some ambiguity as to whether the EEOC would issue right-to-sue letters to governmental employees only if the EEOC found that there was no reasonable cause to conclude that the employees had been subjected to discrimination, while the DOJ would apparently issue such notices only where the EEOC finds probable cause, but conciliation efforts fail, and the case is then referred to the DOJ; the court found that the ambiguity was resolved by 29 C.F.R. § 1601.28(d) (1987); in the circumstances of the case before it, both the EEOC's first right-to-sue letter, based on a finding of no probable cause, and the DOJ's second right-to-sue letter, after the EEOC reconsidered its conclusion, were proper). Thus, Kane's concern about finding herself in a "gotcha" situation, where she asserts she could not tell which right-to-sue letter was effective, and therefore could lose her ability to file a timely lawsuit if she acted on one letter instead of the other, was very real. However, these concerns are by-the-

argues that her premature filing should be excused, because she reasonably relied on the EEOC's right-to-sue letter, even if it was not the correct right-to-sue letter. The court concludes that the IDHS's motion for summary judgment should be denied, not on the ground that Kane reasonably relied on the EEOC's letter, but on the ground that she cured the defect in her premature filing by subsequently obtaining a right-to-sue letter from the proper agency, the DOJ, before any objection to the timeliness of her complaint was made. These matters are discussed in the following subsection.

### b. Premature filing

Although Title VII provides that suit must be filed within ninety days of receipt of a right-to-sue letter, 42 U.S.C. § 2000e–5(f)(1), the Eighth Circuit Court of Appeals has rejected its own prior precedent, which had held that the filing of a lawsuit within ninety days of receiving a right-to-sue letter was jurisdictional, finding instead that the ninety-day requirement was in the nature of a statute of limitations, subject to equitable tolling:

> We note … that *Hinton [v. CPC Int'l, Inc.,* 520 F.2d 1312 (8th Cir.1975),] has since been overruled *sub silentio* to the extent that it held the ninety-day filing requirement was jurisdictional. In *Hill v. John Chezik Imports,* 869 F.2d 1122 (8th Cir.1989), a panel of this Circuit held that the ninety-day period was not jurisdictional and thus is "subject to equitable tolling in appropriate circumstances." *Id.* at 1124 (relying on *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Equitable tolling is available when the plaintiff fails to file a timely lawsuit due to the plaintiff's "excusable neglect." *Anderson v. Unisys Corp.,* 47 F.3d 302, 306 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 299, [133] L.Ed.2d [205] (1995).

*Winbush v. State of Iowa by Glenwood State Hosp.,* 66 F.3d 1471, 1477 (8th Cir.1995); *Hill v. John Chezik Imports,* 869 F.2d 1122, 1124 (8th Cir.1989) ("We hold that the ninety-day limitation period of 42 U.S.C.

§ 2000e–5(f)(1) is not a jurisdictional prerequisite to federal suit and is, therefore, subject to equitable tolling in appropriate circumstances," but finding no such circumstances where the plaintiff did not receive the right-to-sue letter from the EEOC, because she had failed to notify the EEOC of her change of address and because the plaintiff learned that the right-to-sue letter had been sent when she still had "ample" time to file her suit, but did nothing).

As both the Eighth Circuit Court of Appeals and this court have recognized,

> "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (equitable tolling denied in Title VII case where plaintiff failed to file suit within ninety days after receipt of right to sue letter). Courts are duty-bound to lay aside their personal sympathies, even when they are not so vague, and to decide the cases that come before them in accordance with the rule of law.

*Heideman v. PFL, Inc.,* 904 F.2d 1262, 1268 (8th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *accord Mummelthie v. City of Mason City, Ia.,* 873 F.Supp. 1293, 1312 (N.D.Iowa 1995) (ADEA case also quoting *Baldwin County Welcome Ctr.,* 466 U.S. at 152, 104 S.Ct. at 1726, and finding that the plaintiff's failure to timely file her age discrimination claims entitled the defendant to summary judgment on those claims under the ADEA), *aff'd,* 78 F.3d 589 (8th Cir.1996) (table opinion); *Roush,* 838 F.Supp. at 1334 (also citing *Baldwin County Welcome Ctr.,* 466 U.S. at 152, 104 S.Ct. at 1726, and finding the plaintiff's Title VII action untimely where the plaintiff failed to meet the 90–day filing requirement, ignored the defendant's motion for summary judgment, and failed to assert, let alone establish, any equitable tolling principles to save her claim). Nonetheless, as the Eighth Circuit

---

by, because the court finds that Kane cured any defect in her premature filing by obtaining a right-to-sue letter from the correct federal agen-

cy, the DOJ, before the IDHS made any challenge to her right to sue in federal court.

Court of Appeals also recognized in *Winbush*, 66 F.3d at 1477, and *Hill*, 869 F.2d at 1124, when equity, rather than some "vague sympathy," justifies tolling of the ninety-day filing requirement, relief from a strict reading of the timeliness requirements of 42 U.S.C. § 2000e–5(f)(1) is a decision on a case "in accordance with the rule of law." *Cf. Heideman*, 904 F.2d at 1268.

*i. Curing premature filing.* Even more to the point in this case than the possibility of equitable tolling is the holding of the Eighth Circuit Court of Appeals that "the failure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect." *Jones v. American State Bank*, 857 F.2d 494, 499 (8th Cir.1988). In *Jones*, the defendant argued that, despite the absence of prejudice, the plaintiff's failure to obtain a right-to-sue letter prior to filing suit required dismissal. *Jones*, 857 F.2d at 499. The Eighth Circuit Court of Appeals first noted that the Supreme Court had concluded in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), that the filing of a timely charge of discrimination was not a jurisdictional prerequisite to a federal court suit, but was instead akin to a statute of limitations. *Jones*, 857 F.2d at 499. The court then extrapolated from *Zipes* to conclude as follows:

Because a timely filing with the EEOC necessarily precedes the return of a right-to-sue notice from the EEOC, such notices must also be curable. *See Williams v. Washington Metropolitan Area Transit Authority, et al.*, 721 F.2d 1412, 1418 n. 12 (D.C.Cir.1983). We hold that receipt of a right-to-sue notice is a condition precedent to a filing of a Title VII claim, curable after the action has commenced. *Accord Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984); *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1351 (9th Cir.1984); *Fouche v. Jekyll Island–State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir.1983); *Perdue [v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir.1982) ]; *Pinkard [v. Pullman–Standard*, 678 F.2d 1211, 1215 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983) ].

*Jones*, 857 F.2d at 499–500. Thus, *Jones* provides that filing of a Title VII lawsuit prior to receipt of a right-to-sue letter from the appropriate agency is a curable defect, at least in circumstances demonstrating no prejudice to the defendant. *Id.*

*ii. Other authority.* Other circuit courts of appeals have embraced the rule in *Jones*, although it is more often known as the "*Pinkard* rule," after the decision of the Fifth Circuit Court of Appeals in *Pinkard v. Pullman–Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983). For example, in *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442 (9th Cir.1990), the Ninth Circuit Court of Appeals made explicit the "no prejudice" requirement implicit in *Jones*. In *Edwards*, the Ninth Circuit Court of Appeals wrote,

A Title VII complainant may file an action prior to receiving her right to sue letter, provided there is no evidence showing that the premature filing precluded the state from performing its administrative duties or that the defendant was prejudiced by such filing. *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1351 (9th Cir.1984). There is no such evidence in this case.

*Edwards*, 892 F.2d at 1445. Thus, to the *Jones* "no prejudice" requirement, *Edwards* adds a requirement that the premature filing not interfere with administrative functions. This theme is developed more fully in the next case considered here, which invoked the same general rule on the basis of the *Pinkard* decision.

Most recently, the Eleventh Circuit Court of Appeals has said,

The court in *Pinkard* held that the receipt of a right-to-sue letter is not a jurisdiction prerequisite to suit in district court, but rather, is a condition precedent subject to equitable modification. *[Pinkard,]* 678 F.2d at 1216. *See also Fouche v. Jekyll Island–State Park Authority*, 713 F.2d 1518, 1525 (11th Cir.1983) . . . . Because [the plaintiffs] filed suit before receiving their right-to-sue letters, they must depend upon equitable modification.

*Forehand v. Florida State Hosp. at Chatta-hoochee,* 89 F.3d 1562, 1567–68 (11th Cir. 1996). In *Forehand,* the Eleventh Circuit Court of Appeals rejected an argument that *Pinkard* had established a *per se* rule that " 'the receipt of a right-to-sue letter subsequent to the commencement of a Title VII action, but while the action remains pending, satisfies the precondition that a plaintiff obtain statutory notice of the right to sue before filing a civil action under Title VII.' " *Forehand,* 89 F.3d at 1568 (quoting *Pinkard,* 678 F.2d at 1219). Instead, after examining decisions rendered after *Pinkard,* the decisions in *Sims v. Trus Joist MacMillan,* 22 F.3d 1059 (11th Cir.1994), and *Cross v. State of Alabama,* 49 F.3d 1490 (11th Cir.1995), the Eleventh Circuit Court of Appeals wrote, "because the issue is one requiring consideration of the equities, we readily conclude that there is no per se rule that receipt of a right-to-sue letter during the pendency of the suit always satisfies the exhaustion requirement. We reject plaintiffs' proposed per se rule." *Forehand,* 89 F.3d at 1570. The Eleventh Circuit Court of Appeals found that the rule could not be invoked where "a claimant attempts to frustrate investigation or conciliation by the EEOC." *Id.* However, the court rejected the notion that requesting a right-to-sue letter before the expiration of the 180–day period of the EEOC's exclusive jurisdiction constituted a failure to cooperate sufficient to prevent invocation of the *Pinkard* rule. *Id.* at 1570–71. Thus, *Forehand* explains, in more detail than *Edwards,* that the plaintiff's premature filing must not be part of an attempt to frustrate investigation or conciliation by the EEOC or other administrative agency or be indicative of a lack of cooperation with administrative procedures.

Yet another circuit court of appeals, the Seventh Circuit Court of Appeals, recognized many of the same decisions identified by our circuit court of appeals in *Jones* as establishing that filing of a Title VII lawsuit prior to receiving a right-to-sue letter is not fatal to the plaintiff's claim. *See Perkins v. Silverstein,* 939 F.2d 463 (7th Cir.1991). In *Perkins,* the court wrote,

> While [Title VII claims] may have been subject to dismissal at any time prior to Perkins' receipt of a right-to-sue letter, the receipt of that letter after the complaint had been filed, but before it had been dismissed, effectively cured the deficiency in the original complaint. *Williams v. Washington Metro. Area Transit Authority,* 721 F.2d 1412, 1418 n. 12 (D.C.Cir. 1983); *Fouche v. Jekyll Island–State Park Authority,* 713 F.2d 1518, 1525 (11th Cir. 1983); *Perdue v. Roy Stone Transfer Corp.,* 690 F.2d 1091, 1093 (4th Cir.1982); *Pinkard v. Pullman–Standard, a Division of Pullman, Inc.,* 678 F.2d 1211, 1218 (5th Cir.1982) (per curiam), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983); *Clanton v. Orleans Parish School Board,* 649 F.2d 1084, 1095 n. 13 (5th Cir.1981); *Henderson v. Eastern Freight Ways, Inc.,* 460 F.2d 258, 260 (4th Cir. 1972) (per curiam), *cert. denied,* 410 U.S. 912, 93 S.Ct. 976, 35 L.Ed.2d 275 (1973).

*Perkins,* 939 F.2d at 471.[13] Thus, under *Perkins,* no refiling or amendment of the complaint to state that the right-to-sue letter had been received was required; mere "receipt" of the right-to-sue letter was sufficient to cure the defect. *Id.*

### 3. The timeliness defect and cure in this case

### a. Subsequent amendment or "receipt"?

██ Under the last of the authorities cited above, *Perkins,* Kane's premature filing is not fatal on the ground that she did not subsequently amend her complaint to state that she had received the right-to-sue letter from the DOJ, as the IDHS contends, because she had in fact received that right-to-sue letter. *Perkins,* 939 F.2d at 471. Kane's "receipt" of the right-to-sue letter from the DOJ, not her filing of it, cures the defect of

---

13. In another decision, the Seventh Circuit Court of Appeals also observed that "[a]lthough exhaustion of administrative remedies is essential, [the plaintiff] eventually completed the administrative steps; prematurity is not a question of subject-matter jurisdiction independent of exhaustion."

*Espinueva v. Garrett,* 895 F.2d 1164, 1167 (7th Cir.1990) (citing *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 751 (1990).

her premature filing of her lawsuit. *Id.*[14] What the Seventh Circuit Court of Appeals found was fatal to the plaintiff's claim in *Perkins* was not its premature filing, but the insufficiency of the allegations of a Title VII violation. *Id.* The IDHS has not challenged the adequacy of Kane's allegations of a Title VII violation in any way in its motion for summary judgment, simply resting, instead, on the prematurity of her filing of the federal lawsuit. Thus, this limitation from *Perkins* is inapplicable here.

### b. *"Prejudice"*

■ This leaves the limitations discussed in the other cases cited above as potentially barring Kane's invocation of the general rule that she could cure a premature filing by subsequently receiving a right-to-sue letter from the appropriate agency. The IDHS contends that, unlike the circumstances in *Jones,* there is "prejudice" in this case. *See Jones,* 857 F.2d at 499 (suggesting that premature filing may be cured in the absence of prejudice to the defendant); *accord Edwards,* 892 F.2d at 1445 (stating that the defect may be cured if there is no prejudice to the defendant). The IDHS contends that "[t]he prejudice to the Defendant in this case is having to defend a suit that should be dismissed." Defendant's Brief In Support Of Motion For Summary Judgment, p. 7. The

IDHS distinguishes *Jones* on the basis that, in *Jones,* trial on the merits had already occurred in state court, and the plaintiff went to federal court to supplement her state remedy, a situation not present here. This argument is unavailing.

"Prejudice" in this context cannot mean having to defend a suit that should be dismissed, because that is merely begging the question. Furthermore, in *Jones,* the defendant was still required to defend a claim that "should be dismissed," even if it was a claim only for supplemental relief. *Jones,* 857 F.2d at 496 (the plaintiff initiated the federal lawsuit, after recovering backpay, interest, costs, and disbursements, as well as a purging of all negative references from her employment records in the state lawsuit, to recover attorneys' fees not available under state law, but available under Title VI). Rather, the "prejudice" required to bar Kane's premature claim must be some prejudice to the IDHS's ability to defend against Kane's claims—such as a change in Kane's legal theories, the need for additional discovery or trial preparation, or tardiness in asserting stale claim—such that premature filing makes it difficult for the defendant to obtain required evidence or witnesses. *Cf., e.g., Rouse v. Farmers State Bank of Jewell, Ia.,* 866 F.Supp. 1191, 1199 (N.D.Iowa 1994) (recognizing these factors as elements of a

**14.** In *Jones v. Bechtel,* 788 F.2d 571, 573 (9th Cir.1986), a decision rendered at a time when the Ninth Circuit Court of Appeals still held that receipt of a right-to-sue letter was a "jurisdictional" requirement, not merely a precondition to suit, the Ninth Circuit Court of Appeals recognized that in a prior decision, *Wrighten v. Metropolitan Hosp., Inc.,* 726 F.2d 1346, 1351 (9th Cir.1984), it had held that "a district court has jurisdiction over a Tide VII claim if a suit is filed before a right-to-sue letter has been issued, as long as such a letter is issued before trial." *Bechtel,* 788 F.2d at 573. In *Bechtel,* the court found further that a *pro se* plaintiff could be forgiven for not amending his complaint to present the right-to-sue letter to the court:

Here, in substance, the jurisdictional defect was cured before the action was dismissed—the necessary right-to-sue letter had been issued and that information was presented to the court, although in the wrong form [because it was in a resistance to a motion to dismiss]. Counsel would have been expected to present the letter to the court in the form of a motion

to amend the complaint. In this circumstance, with a pro se plaintiff, we hold that it was error to dismiss the complaint with prejudice, without affording the plaintiff an opportunity to amend his complaint to allege that the right-to-sue letter had been issued and thus cure the jurisdictional defect.

*Bechtel,* 788 F.2d at 573. In the present case, Kane has presented the EEOC's right-to-sue letter in her resistance to the motion for summary judgment, perhaps the "wrong form" for a party represented by counsel, but she has also presented it in a motion to amend her complaint, which has been granted. She has not, thus far, presented the DOJ's right-to-sue letter in either manner, although it is part of the record by virtue of the IDHS's moving papers. Defendant's Supplement To Statement Of Undisputed Fact In Support Of Motion For Summary Judgment. The court hesitates to visit upon any party, even one represented by counsel, the consequences of presenting a right-to-sue letter in the "wrong form." Therefore, Kane will be granted leave to amend her complaint to add the DOJ's right-to-sue letter as well as the EEOC's.

showing of prejudice to the opposing party when considering leave to amend pursuant to *Fed.R.Civ.P.* 15). There is none of that "prejudice" here. Nor is there any prejudice to the IDHS, because it was somehow unaware of Kane's claims or was unfairly surprised by the timing of Kane's filing of her federal lawsuit when Kane filed suit before receiving a right-to-sue letter. The IDHS had full notice of the nature of Kane's claims from the filing of the charges with the EEOC and the Iowa Civil Rights Commission and its involvement in a companion workers' compensation case. Because Kane filed suit only after the expiration of the EEOC's 180–day exclusive jurisdiction, the IDHS cannot be heard to complain that it was surprised by the timing of Kane's lawsuit.

#### c. *Flouting administrative relief*

█ Nor is there any basis in the record for finding that Kane was attempting to circumvent or interfere with administrative proceedings by filing a premature lawsuit in federal court. *See Forehand,* 89 F.3d at 1570–71; *Edwards,* 892 F.2d at 1445. There is also no inference from the record that Kane attempted to frustrate investigation or conciliation by the EEOC or another administrative agency nor any inference of a lack of cooperation with administrative procedures. *Forehand,* 89 F.3d at 1570–71. First, there is no indication in the record that there were any investigatory or conciliation efforts being undertaken by the EEOC, and counsel agree that there were none, so that there were no EEOC actions that were frustrated by Kane's filing of her lawsuit. Second, Kane's request for a right-to-sue letter, as was her filing of her lawsuit, was well outside of the period of the EEOC's exclusive jurisdiction, so that Kane was not failing to cooperate with the agency when she filed suit.

Also by way of contrast, in *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1487–88 (6th Cir.1989), the court found that the plaintiff had circumvented the administrative procedures by prematurely filing suit in federal court. Although the plaintiff claimed to have requested a right-to-sue letter, the plaintiff had merely filed a request to withdraw her charges and did not request a right-to-sue letter, and the plaintiff offered no circumstances under which she was entitled to waiver, estoppel, or equitable tolling of the requirement that she obtain a right-to-sue letter. *Puckett,* 889 F.2d at 1488. The court concluded that requesting withdrawal of administrative charges after filing a lawsuit "flouts the statutory requirement of receipt of a right-to-sue letter, and amounts to a position of arrogance regarding the statutory requirement as mere surplusage." *Id.* In this case, it is evident from Kane's undisputed efforts to obtain a right-to-sue letter that there is no inference that she intended to flout the statutory requirement; instead, the only reasonable inference is that Kane was attempting to comply with the statutory requirement of obtaining a right-to-sue letter while recognizing the timeliness requirements for suit on her state-law claim. Thus, *Puckett* is also distinguishable.

#### d. *Entitlement to equitable modification*

█ Finally, the IDHS argues that Kane is not entitled to any equitable modification of the timeliness requirement, because her complaint demonstrates that she knew she needed a right-to-sue letter from the DOJ, and even stated in her complaint that she would supplement her complaint with such a letter when it was received, but she failed to do so at any time after May 10, 1996, when the DOJ sent its right-to-sue letter. In this regard, the IDHS puts particular stress on the decision in *Fouche,* 713 F.2d at 1524. In *Fouche,* the court found that the plaintiff had diligently sought a right-to-sue letter from the DOJ, but the DOJ had refused to provide such a letter. *Id.* at 1524, 1526. The court found that the plaintiff had done all that could be done to obtain the letter, and therefore, the IDHS contends, the court waived the statutory requirement of obtaining a right-to-sue letter before filing suit. *Id.* at 1526. The IDHS contrasts these circumstances with the ones presented here, asserting that Kane knew when she filed the suit that she had not yet obtained the right-to-sue letter required, but she did nothing, either before or subsequently, to obtain the letter from the DOJ.

 This argument by the IDHS is indeed one of "form over substance," as Kane contends. Kane ultimately received the required right-to-sue letter from the DOJ. The IDHS had notice that Kane could cure the defect of her premature filing, because the IDHS also received a copy of the DOJ's right-to-sue letter. Receipt of that letter by all parties fulfilled the spirit of the administrative exhaustion requirement. Furthermore, because this is a matter of equity, the court notes the countervailing import of the IDHS's failure to challenge the timeliness of the lawsuit until nearly a year after it was filed and many months after the IDHS received notice that Kane had cured the defect of her premature filing by obtaining a right-to-sue letter from the DOJ. As in *Perkins*, this court notes that, while Kane's Title VII claims may have been subject to dismissal *at any time prior to her receipt of a right-to-sue letter*, "the receipt of that letter after the complaint had been filed, but before it had been dismissed, effectively cured the deficiency in the original complaint." *Perkins*, 939 F.2d at 471. The IDHS sat on its opportunity to obtain the relief it now demands via a motion for summary judgment until long after the defect of which it complains had been cured.

### 4. Summary

To put the shoes on the proper feet, the IDHS has failed to identify portions of the undisputed record showing that Kane could not and did not cure the defect of her premature filing as a matter of law. *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53). Instead, the un-

disputed record demonstrates that Kane has indeed cured the defect of premature filing by receiving a right-to-sue letter from the proper agency. Furthermore, the IDHS has failed to identify any portions of the undisputed record showing any legally cognizable prejudice to the IDHS from Kane's premature filing. *Id.* The IDHS's motion for summary judgment on Kane's Title VII claim will therefore be denied.

## V. CONCLUSION

The court concludes that the IDHS's motion for summary judgment must be granted in part and denied in part. The motion must be granted as to the IDHS's assertion of Eleventh Amendment immunity to Kane's claim under the Iowa Civil Rights Act. There has been no express waiver of immunity in the ICRA to suits against the state in federal court. However, the IDHS's motion for summary judgment must be denied as to the IDHS's assertion that Kane's Title VII claim must be dismissed, because it was filed prematurely. The court finds that Kane has cured the defect of premature filing by subsequently obtaining a right-to-sue letter from the appropriate federal agency, the United States Department of Justice, and the IDHS has identified no legally sufficient prejudice to it from the premature filing.

Consequently, the IDHS's November 27, 1996, motion for summary judgment is **granted in part and denied in part.** The motion is **granted** as to Kane's state-law claim under the Iowa Civil Rights Act, and that claim is hereby dismissed without prejudice to refiling of the claim in state court.[15]

---

**15.** Iowa Code § 614.10, Iowa's "failure of action" statute, provides as follows:

> If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

In order for a plaintiff's cause of action to come within § 614.10, there are four requirements:
1. The failure of a former action not caused by plaintiff's negligence.
2. The commencement of a new action brought within six months thereafter.
3. The parties must be the same.
4. The cause of action must be the same.

*Beilke v. Droz*, 675 F.2d 194, 195 (8th Cir.1982) (citing *Hartz v. Brunson*, 231 Iowa 872, 2 N.W.2d 280, 283 (1942)). In *Beilke*, the U.S. District Court for the Eastern District of Wisconsin had dismissed a lawsuit against the insurer on the ground that the insurer may not be sued directly under a Wisconsin statute. *Id.* The suit was refiled in federal court in Iowa, and the court determined that Iowa Code § 614.10 would permit the action to go forward if the insured and the insurer were the "same party" within the meaning of the statute. *Id.* The Eighth Circuit Court of Appeals certified to the Iowa Supreme Court the question of whether an insured and its insurance company were "the same" within the meaning of the statute. *Id.* The Iowa Supreme Court answered in the affirmative. *Id.* In the

The motion is denied as to Kane's Title VII claim. This matter will therefore proceed to trial on the Title VII claim.

Furthermore, the IDHS's January 24, 1997, motion to dismiss the "Supplemental Complaint" for failure to state a claim, pursuant to *Fed.R.Civ.P.* 12(b)(6), is **denied as moot.**

**IT IS SO ORDERED.**

present case, the court sees no reason why Kane could not meet the requirements of the Iowa "failure of action" statute to refile her state-law claim pursuant to the ICRA in Iowa district court, even if it would otherwise be time barred, because it was timely filed in federal court and has been dismissed through no fault of Kane's.