50 F.3d 502
 40 ERC 1572, 31 Fed.R.Serv.3d 1248,
26 Envtl. L. Rep. 20,207
 Guy THOMAS; Elaine Moretz; Earle F. Doman; Dalene Doman;
David E. Ross; Joann Ross; Michael G. Knapp, D.O.;
Stephen Lee Luebber; Rebecca L. Luebber; Kathleen A.
Knapp; Peter Reich; Ruth Reich; L. Floyd Smith; George
K. Smith; and all others similarly situated, Plaintiffs
v.
FAG BEARINGS CORPORATION; FAG Kugelfischer Georg Schaefer
KGaA, Defendants-Appellees,
v.
MISSOURI DEPARTMENT OF NATURAL RESOURCES, Defendant-Appellant.
FAG BEARINGS CORPORATION, Third-Party Plaintiff,
v.
CONTRACT FREIGHTERS, INC.; International Paper Company;
Midcon Cables Company; Motorola, Inc.; Gulf States Paper
Company; The Pillsbury Company, Inc.; Service Packing
Company; Vickers, Inc., Third-Party Defendants.
 No. 94-2452.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 15, 1994.
Decided March 13, 1995.
 
 Deborah Neff, Asst. Atty. Gen., Jefferson City, MO, argued for appellant (Shelley A. Woods, Asst. Atty. Gen., on brief).
 David F. Oliver, Kansas City, MO, argued for appellees (M. Jan Day and Margaret V. Epple, on brief).
 Before MAGILL and BEAM, Circuit Judges, and SHANAHAN,* District Judge.
 BEAM, Circuit Judge.
 
 
 1
 This interlocutory appeal addresses whether the Eleventh Amendment prohibits involuntary joinder of the Missouri Department of Natural Resources ("MDNR"), a state agency. The district court found the Eleventh Amendment inapplicable because none of the parties had asserted any claims directly against MDNR and because involuntary joinder merely dictated the timing of MDNR's action. We conclude that coercive joinder violates the Eleventh Amendment. Accordingly, we reverse.
 
 I. BACKGROUND
 
 2
 The underlying litigation in this case springs from the discovery of hazardous substances in the groundwater and certain drinking water wells in Newton County, Missouri. The contaminated water was concentrated primarily in the neighboring villages of Silver Creek and Saginaw. After the contamination was discovered, MDNR arranged for area residents to receive clean bottled water and began an investigation into the contamination's cause. MDNR did not propose the installation of a permanent water filtration system in either village at that time. Unwilling to wait, the residents of Silver Creek voted to install a filtered water system themselves. Residents of Saginaw did not undertake such an initiative.
 
 
 3
 When its investigation had progressed further, MDNR concluded that FAG Bearings Corporation ("FAG") was a "potentially responsible party" for CERCLA[1] purposes. MDNR announced its intention to fund a remedial investigation/feasibility study and to install a filtered water system in Saginaw. MDNR stated that it intended to obtain its funding from FAG under CERCLA or a similar state environmental statute. However, MDNR told Silver Creek residents that due to unclear legal precedent, it would not be able to reimburse them for money they had invested in their water filtration system.
 
 
 4
 Understandably frustrated, a group of Silver Creek citizens filed suit against FAG in federal district court. The citizens sought damages and equitable relief under various statutes, including CERCLA and RCRA,[2] and common law causes of action. FAG moved to join MDNR as a party under Fed.R.Civ.P. 19(a) based on MDNR's previous statement that it intended to sue FAG for the costs of remediation. Since the citizen suit also sought remediation costs, FAG contended that joinder was necessary to prevent it from incurring double, multiple or otherwise inconsistent obligations.[3] See Fed.R.Civ.P. 19(a).
 
 
 5
 MDNR objected to joinder on several grounds, including Eleventh Amendment immunity. Relying on the "plain words" of the Eleventh Amendment, the district court found it inapplicable because MDNR's joinder "only involves requiring [MDNR] to assert its claims at a time dictated by this Court, and in a forum in which [MDNR] has jurisdiction to sue." Thomas v. FAG Bearings Corp., No. 92-5070-CV-SW-8, Order at 4 (W.D.Mo. May 17, 1994). The district court granted FAG's motion, joined MDNR as a defendant, and suggested that MDNR could later be realigned as a plaintiff. MDNR appeals.[4]
 
 II. ANALYSIS
 
 6
 MDNR asserts that the Eleventh Amendment precludes involuntary joinder because such joinder, even if it involves later realignment as a plaintiff,[5] constitutes a suit against the state.[6] We review district court determinations of Eleventh Amendment immunity de novo. Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 100, 130 L.Ed.2d 49 (1994). See also Seminole Tribe v. Florida, 11 F.3d 1016, 1021 (11th Cir.1994), cert. granted, --- U.S. ----, 115 S.Ct. 932, 130 L.Ed.2d 878 (1995).
 
 
 7
 The breadth of the Eleventh Amendment's protection against suits in federal court determines whether we may permit coercive joinder of MDNR. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.
 
 
 8
 Almost since its enactment, courts have struggled with the boundaries created by this Amendment. These endeavors have resulted in the creation of many legal fictions which control the Eleventh Amendment's interpretation. For example, although the Amendment's terms bar only suits against states by non-residents, an early case established that the Eleventh Amendment also prohibits suits against a state by that state's residents. Hans v. Louisiana, 134 U.S. 1, 15-16, 10 S.Ct. 504, 507-08, 33 L.Ed. 842 (1890). The Amendment's terms address only federal suits in law and equity, yet it has been construed to also bar certain admiralty suits. Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 683 n. 17, 102 S.Ct. 3304, 3313-14 n. 17, 73 L.Ed.2d 1057 (1982). Other cases have interpreted the Eleventh Amendment to prohibit suits against a state by both foreign nations and Indian tribes. Monaco v. Mississippi, 292 U.S. 313, 330, 54 S.Ct. 745, 751, 78 L.Ed. 1282 (1934); Standing Rock Sioux Indian Tribe v. Dorgan, 505 F.2d 1135, 1141 (8th Cir.1974).[7]
 
 
 9
 Given the nature of Eleventh Amendment jurisprudence, we reject a "plain words" interpretation of the Eleventh Amendment.[8] We are also unwilling to rely on the few cases involving joinder of state entities. These cases have little relevance because they do not discuss Eleventh Amendment issues. See Diagnostic Unit Inmate Council v. Motion Picture Assoc., 953 F.2d 376 (8th Cir.1992) (per curiam); United States v. Hooker Chem. & Plastics Corp., 607 F.Supp. 1052 (W.D.N.Y.), aff'd, 776 F.2d 410 (2d Cir.1985). It is entirely possible that the state agencies in both cases waived their immunity (or intended to waive their immunity). In such a situation, of course, no Eleventh Amendment problem exists.[9]
 
 
 10
 Rather than look to the Amendment's literal terms, we will more generally examine Eleventh Amendment jurisprudence to determine precisely what qualifies as a suit against the state. " 'What is a suit? We understand it to be the prosecution, or pursuit, of some claim, demand, or request. In law language, it is the prosecution of some demand in a Court of justice.' " Missouri v. Fiske, 290 U.S. 18, 26, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933) (quoting Cohens v. Virginia, 6 Wheat. 264, 407, 5 L.Ed. 257 (1821)). A later articulation of the Eleventh Amendment's reach characterizes a suit against the state more concretely. A suit is against the state if " 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908-09 n. 11, 79 L.Ed.2d 67 (1984) (quoting Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)).
 
 
 11
 These examples demonstrate that the Eleventh Amendment bars involuntary joinder of MDNR. Involuntary joinder will compel MDNR to act by forcing it to prosecute FAG at a time and place dictated by the federal courts.[10] This disrespect for state autonomy in decision-making is precisely what the Eleventh Amendment was intended to avoid. Indeed, " '[t]he very object and purpose of the Eleventh Amendment [is] to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.' " Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, --- U.S. ----, ----, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993) (quoting In re Ayers, 123 U.S. 443, 505, 8 S.Ct. 164, 183, 31 L.Ed. 216 (1887)).
 
 
 12
 Permitting coercive joinder also undermines the two aims of the Eleventh Amendment: protection for a state's autonomy and protection for its pocketbook. Hess v. Port Auth. Trans-Hudson Corp., --- U.S. ----, ----, 115 S.Ct. 394, 400, 130 L.Ed.2d 245 (1994). Involuntary joinder diminishes state sovereignty by permitting FAG to unilaterally waive MDNR's Eleventh Amendment immunity. As a general matter, only unmistakable and explicit waiver by the state itself qualifies as a waiver of Eleventh Amendment immunity. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146-47, 87 L.Ed.2d 171 (1985); Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360-61, 39 L.Ed.2d 662 (1974); Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305, 110 S.Ct. 1868, 1872-73, 109 L.Ed.2d 264 (1990) (Feeney).
 
 
 13
 FAG contends that this unilateral waiver does not trigger state sovereignty ramifications because the high waiver standard only applies when parties directly assert claims against the state. We do not find this argument persuasive. The cases applying the strict waiver standard focus on the Eleventh Amendment's respect for state autonomy, and not on the procedural status of a case. See, e.g., Atascadero, 473 U.S. at 240, 105 S.Ct. at 3146; Edelman, 415 U.S. at 673, 94 S.Ct. at 1360-61; Feeney, 495 U.S. at 305, 110 S.Ct. at 1872-73. Thus, concern and respect for state sovereignty are implicated whenever a state is involuntarily subjected to an action, regardless of the role it is forced to play in the litigation.
 
 
 14
 The other aim of the Eleventh Amendment, protection of the state treasury, is not directly implicated now, but it may be in the future.[11] Premature litigation potentially limits the costs MDNR can recover. See United States v. Gurley, 43 F.3d 1188, 1197 (8th Cir.1994) (environmental agency's recovery limited due to previous lawsuit). Because MDNR has an obligation to Missouri citizens regardless of whether reimbursement is obtained, a cost-recovery limitation will arguably affect MDNR's future financial status.
 
 
 15
 Finally, viewing the Eleventh Amendment as inapplicable in joinder decisions demonstrates a fundamental misunderstanding of the Eleventh Amendment's role in the federal system. The Eleventh Amendment is the constant undercurrent for all state interactions in federal courts. See, e.g., Puerto Rico Aqueduct, --- U.S. at ----, 113 S.Ct. at 688 (reaffirming that Eleventh Amendment provides immunity from suit, not merely immunity from liability). It may be circumvented by waiver, abrogation, or a suit against state officials, but federal courts cannot simply deem a state's Eleventh Amendment defense inapplicable.
 
 
 16
 For example, when a state voluntarily appears as a plaintiff and subjects itself to a federal court's jurisdiction, we do not say that the Eleventh Amendment is irrelevant or that the state never had immunity. Instead, we find that the state has waived this immunity by agreeing to participate as a plaintiff. See, e.g., Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 883, 27 L.Ed. 780 (1883) (discussing state's waiver of Eleventh Amendment immunity when it voluntarily intervened in federal court action). Similarly, we cannot conclude that the Eleventh Amendment is irrelevant or inapplicable to MDNR's coercive joinder simply because none of the parties are asserting claims directly against the state. Rather, we must assume that MDNR has Eleventh Amendment immunity and then consider whether an exception to that immunity exists. Because FAG does not contend that MDNR is subject to an exception, our analysis must end with the conclusion that the Eleventh Amendment applies.
 
 
 17
 In sum, the Eleventh Amendment prohibits the coercive joinder of MDNR. We need not reach MDNR's other arguments.
 
 III. CONCLUSION
 
 18
 Because the Eleventh Amendment bars the involuntary joinder and any subsequent realignment of MDNR, we reverse the district court's order and remand for a determination of whether this case can properly proceed in MDNR's absence.
 
 
 
 *
 The HONORABLE THOMAS M. SHANAHAN, United States District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 CERCLA is the acronym for the Comprehensive Environmental Response, Compensation and Liability Act, codified at 42 U.S.C. Secs. 9601, et seq
 
 
 [2]
 RCRA is the acronym for the Resource Conservation and Recovery Act, codified at 42 U.S.C. Secs. 6901, et seq
 
 
 [3]
 FAG also joined various entities as third-party defendants. Those joinders are not at issue here
 
 
 [4]
 MDNR also filed a motion to expedite the case and supplement the record. We sustain the motion to supplement the record, but overrule the motion to expedite the case as moot
 
 
 [5]
 MDNR does not meet the stringent requirements for initial joinder as an involuntary plaintiff. See Independent Wireless Tel. Co. v. Radio Corp., 269 U.S. 459, 472-74, 46 S.Ct. 166, 170-71, 70 L.Ed. 357 (1926); 3A James W. Moore, et al., Moore's Federal Practice Sec. 19.06 (1994)
 
 
 [6]
 In the interest of simplicity, we will use the term "state" to mean any entity which qualifies for Eleventh Amendment protection. Neither party disputes that MDNR generally qualifies for Eleventh Amendment protection as a state agency
 
 
 [7]
 Of course, legal fictions have also eroded Eleventh Amendment immunity by, among other things, permitting suits against state officials for injunctive and prospective relief. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663-64, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974)
 
 
 [8]
 We note, however, that reliance on the plain words of the Eleventh Amendment could actually support, and not weaken, MDNR's immunity theory. The district court initially joined MDNR as a defendant. Since the suit was initially "against" MDNR, a "plain words" interpretation could dictate that it should receive Eleventh Amendment protection despite its later realignment as a plaintiff. Cf. Stanton v. Ash, 384 F.Supp. 625, 631 (S.D.Ind.1974) (finding Indiana immune under "plain words" approach)
 
 
 [9]
 In Diagnostic Unit, the court did conclude that the state entity's joinder "would not deprive the district court of jurisdiction over the subject matter of the action." Id. at 378. This statement should not be construed to include an Eleventh Amendment analysis. While the Eleventh Amendment possesses a quasi-jurisdictional nature, improper joinder of an immune party would only deprive the district court of authority over the immune party, and not the entire action. The phrase "deprive the court of jurisdiction over the subject matter of the action" has been most commonly interpreted to mean joinder which destroys diversity. Charles A. Wright, et al., 7 Federal Practice and Procedure Sec. 1610 (1986)
 
 
 [10]
 MDNR apparently opposes joinder now because it has not yet completed the regulatory process required by CERCLA and the Missouri environmental statute. Premature litigation of environmental actions could be problematic for MDNR. See United States v. Gurley, 43 F.3d 1188, 1197 (8th Cir.1994) (applying doctrine of res judicata to bar successive environmental action). Although CERCLA expressly permits successive actions based on the same wrong, it is possible that MDNR's claims under other environmental statutes could later be barred if FAG forces MDNR to litigate now
 
 
 [11]
 This factor is dispositive when it is questionable whether a particular entity ever receives Eleventh Amendment protection (i.e. bistate compacts, state universities). Hess, --- U.S. at ----, 115 S.Ct. at 404. Here, MDNR unquestionably qualifies for Eleventh Amendment protection in certain circumstances because it is a Missouri agency