# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1610

_____

Bryan S. Mick, Personal Representative of the Estate of Print Zutavern

*Plaintiff - Appellee*

v.

Deputy Barrett Gibbons, Deputy Lawrence Stump, and Sheriff Dan Osmond, in their individual and official capacities; Custer County, a Nebraska political subdivision, doing business as Custer County Sheriff's Office; Trp. Brandon Wilke, in his individual capacity; John/Jane Doe, training supervisor of the Nebraska State Patrol, in their individual and official capacities

*Defendants - Appellees*

Trp. Sam Mortenson, Sgt. Matt Workman, Lt. Tim Arnold, Trp. Trevino, Trp. Levi Cockle, Cpt. Tyler Schmidt, in their individual and official capacities

*Defendant*s

Nebraska State Patrol

*Interested party - Appellant*

------------------------------

State of Texas; State of Alabama; State of Alaska; State of Arkansas; State of Connecticut; State of Florida; State of Georgia; State of Indiana; State of Iowa; State of Kansas; State of Louisiana; State of Mississippi; State of Missouri; State of Montana; State of New Hampshire; State of North Dakota; State of Ohio; State of Oregon; State of South Carolina; State of South Dakota; State of Tennessee; State of Utah; State of Virginia; State of West Virginia

*Amici on Behalf of Appellant*

Constitutional Accountability Center; Media of Nebraska; Common Cause
Nebraska; American Association for Justice; Public Justice; Nebraska Association
of Trial Attorneys; Nebraska Defense Counsel Association

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: June 10, 2025
Filed: April 1, 2026
_____

Before LOKEN, ERICKSON, and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

On the night of February 23, 2020, Print Zutavern, who had a history of serious mental illness, exploded in rage. His wife Kate called 911. The next morning, John Zutavern, Print's father, called 911, reported that Print's manic episode had worsened, and requested assistance.[1] Notified of the call, the Custer County Sheriff's Office summoned the Nebraska State Patrol (NSP) and briefed it on the situation. When the Sheriff's Office and NSP arrived at the Zutavern ranch, Print was alone in the clubhouse. A standoff ensued, an NSP crisis negotiator was unable to de-escalate the situation, and the NSP sent a light-armored vehicle (LAV) to the ranch to disable Print's off-road vehicle, called a RAZR, that was parked at the ranch. Print emerged from the clubhouse and began driving away in the RAZR. NSP officers followed and rammed into the RAZR as it approached the ranch entrance. Several officers exited

_____

[1]John reported that Print, who was at the clubhouse on the ranch with his parents, "was in bad shape." According to John, Print had shot two calves and was threatening suicide. John claimed that there were firearms in the clubhouse and that Print had texted Kate a photograph of a shotgun to his head.

the LAV and drew their weapons, pointing them at Print and screaming commands. Print, allegedly unarmed, exited the RAZR and walked towards the officers. NSP officer Brandon Wilkie shot Print three times. He tragically died from the wounds.

In February 2022, Bryan Mick, the personal representative of Print's estate, brought this suit under 42 U.S.C. § 1983 against the Custer County Sheriff's Office, the Sheriff and two Sheriff's deputies, seven named NSP officers including Officer Wilkie, and "John/Jane Doe," the NSP training supervisor. Seeking compensatory and punitive damages, Mick alleged constitutional violations, including that the NSP officers "acted with deliberate indifference to Print's known and recognized constitutional and legal rights," and that non-party NSP and its John/Jane Doe training supervisor unconstitutionally failed to train its employees.

During discovery, Mick served a deposition subpoena on non-party NSP, which moved to quash the subpoena, arguing that its state sovereign immunity shielded it from Mick's third-party discovery demand. The district court rejected the sovereign immunity argument and denied NSP's motion to quash, concluding that the issue is governed by our statement in In re Missouri Department of Natural Resources (Missouri DNR), that "[g]overnmental units are subject to the same discovery rules as other persons and entities having contact with the federal courts. . . . There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." 105 F.3d 434, 436 (8th Cir. 1997). NSP appeals this interlocutory ruling, arguing the statement was dicta and is not binding authority on the sovereign immunity issue. Concluding that state sovereign immunity does bar enforcement of the deposition subpoena in this case, we reverse.

## I. Background and Procedural History

Consistent with concessions by Mick, the district court dismissed all claims against the NSP officers in their official capacities, as they are immune under the Eleventh Amendment. The court also dismissed Mick's claims against six of the

-3-

seven NSP officers in their individual capacities for failing to plead a plausible claim for relief, but the court did not dismiss Mick's claim against NSP officer Wilkie in his individual capacity. Thus, the suit continued against Wilkie in his individual capacity, the Sheriff's Office, and the Sheriff and two Sheriff's deputies in their individual and official capacities.

In December 2023 and January 2024, Mick sought discovery from non-party NSP, serving a third-party document subpoena and a notice for a Rule 30(b)(6) deposition of the person most knowledgeable about the training that Wilkie and other NSP officers received on six topics: "a. Responding to persons experiencing a mental health crisis; b. Response to and resolution of events involving barricaded subjects/suspects; c. Use of force (non-lethal and lethal); d. Police service dogs and dog handling, including in tactical events; e. Special Weapons and Tactics and/or SWAT; and f. Video recording devices (body-worn, dashboard, robot)."

NSP complied with the document subpoena but did not agree to the noticed videoconference deposition, claiming in a letter to Mick's counsel that the deposition would require it to designate and prepare five employees on complicated and sensitive topics and that if Mick sought to command the appearance of NSP via a non-party subpoena then "NSP will invoke Nebraska's sovereign immunity, resist any such subpoena, and seek a protective order." When Mick persisted, NSP moved to quash the Rule 30(b)(6) deposition subpoena "based on its sovereign immunity and Eleventh Amendment immunity."

On February 6, 2024, the magistrate judge issued an order denying NSP's motion to quash, relying on the above-quoted statement in Missouri DNR. Missouri DNR "remains good law in the Eighth Circuit and is binding in this case," the magistrate judge concluded, distinguishing our later decision in Alltel Commc'ns, LLC v. DeJordy, 675 F.3d 1100 (8th Cir. 2012). In DeJordy, the district court denied the Oglala Sioux Tribe's motion to quash third-party subpoenas based on its tribal immunity, relying on Missouri DNR. We reversed, holding that the Tribe was

-4-

immune and tribal immunity "is not congruent with that which the Federal Government, or the States, enjoy." Id. at 1104. The magistrate judge rejected NSP's contention "that DeJordy overrules or questions the holding in Missouri DNR"; we "reached two different conclusions based on two incongruent immunities."

NSP objected to the magistrate judge's determination, arguing that Missouri DNR did "not announce a categorial rule permitting any and all third-party discovery requests directed to a sovereign entity to bypass sovereign immunity." The statements in Missouri DNR that "[g]overnmental units are subject to the same discovery rules as other persons and entities having contact with the federal courts," and "[t]here is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court," were unnecessary to decide the case. Rather, NSP contended, Eighth Circuit precedents reflect that a "court considering the propriety of a third-party discovery request should evaluate whether the request is 'disruptive.'" Mick's Rule 30(b)(6) subpoena "falls squarely in the 'disruptive' category," requiring NSP to "prepare at least five different employees to provide testimony on six complex and wide-ranging topics." NSP stated that "each individual will spend five (5) hours preparing for the deposition."

On March 13, 2024, the district court issued an order agreeing with the magistrate judge that the "crystal-clear" holding of Missouri DNR was that governmental units are subject to the same discovery rules as other persons having contact with the federal courts and the Eleventh Amendment does not shield States from discovery. The court reasoned it was not dicta; "[i]t's the plainly stated rule of law that the Court of Appeals applied to conclude that the state defendant's motion to quash was properly denied." The district court agreed that "DeJordy is plainly distinguishable." NSP timely appealed the district court's decision denying its motion to quash. On April 30, Mick moved to dismiss the appeal, contending we lack appellate jurisdiction to review this interlocutory ruling. We deferred ruling on that motion and now conclude that we have appellate jurisdiction to consider this issue under the well-established collateral order doctrine. See DeJordy, 675 F.3d at 1102

-5-

n.1, citing <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 147 (1993); <u>see also</u> <u>Russell v. Jones</u>, 49 F.4th 507, 512 (5th Cir. 2022).

## II. Discussion

On appeal, NSP contends that state sovereign immunity bars enforcement of Mick's Rule 30(b)(6) deposition subpoena because <u>Missouri DNR</u> does not control the question whether Eleventh Amendment immunity shields NSP from being required to comply with this nonparty discovery. We will not reverse a district court's decision denying a motion to quash "as long as it stays within [the range of choice], is not influenced by any mistake of law or fact, or makes a clear error of judgment in balancing relevant factors." <u>Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2</u>, 197 F.3d 922, 925 (8th Cir. 1999) (quotation omitted). "Questions of sovereign immunity are subject to de novo review." <u>Lors v. Dean</u>, 746 F.3d 857, 861 (8th Cir. 2014).

To properly determine and apply the holding in <u>Missouri DNR</u>, we must start with the closely related case that preceded it, <u>Thomas v. FAG Bearings Corp.</u>, 50 F.3d 502 (8th Cir. 1995). In <u>Thomas</u>, a state agency, the Missouri Department of Natural Resources ("MDNR"), investigated the source of water contamination in Newton County, Missouri. MDNR concluded FAG Bearings Corporation ("FAGBC") was the "potentially responsible party" and announced its intent to sue FAGBC for the costs of remediation in the village of Saginaw. Citizens of another village in Newton County had already installed a new water filtration system and sued FAGBC, seeking reimbursement. FAGBC moved to join MDNR as a party under Federal Rule of Civil Procedure 19(a) "based on MDNR's previous statement that it intended to sue FAG for the costs of remediation" in Saginaw. 50 F.3d at 503-04.

We held that Eleventh Amendment immunity precluded the involuntary joinder of MDNR. The Eleventh Amendment, we said, "is the constant undercurrent for all state interactions in federal courts." We discussed in detail whether involuntary

joinder of a state as a plaintiff is a "suit against the state" under the Eleventh Amendment. Necessary to our decision that involuntary joinder was "a suit" was that forcing MDNR to join the case, even as a plaintiff, would infringe on its autonomy or threaten its treasury:

> A suit is against the state if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act. . . . This disrespect for state autonomy in decision-making is precisely what the Eleventh Amendment was intended to avoid. Indeed, the very object and purpose of the Eleventh Amendment is to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties. . . . Permitting coercive joinder also undermines the two aims of the Eleventh Amendment: protection for a state's autonomy and protection for its pocketbook.

Id. at 505-06 (cleaned up).

Two years later, Missouri DNR came before our court. After FAGBC settled with the Thomas plaintiffs, it initiated litigation to recover the cost of that settlement with others it claimed were the real cause of the Newton County water contamination. Missouri DNR, 105 F.3d at 435. During discovery, FAGBC served a third-party subpoena on MDNR, requesting 137 documents. MDNR refused to produce the documents "based on various assertions of privilege" and moved to quash the subpoena. The district court denied MDNR's motion and ordered production of the documents with certain conditions that protected privileged information.

We denied MDNR's petition for a writ of mandamus to order the district court to quash the subpoena. The legal issue was whether the "district court's order violate[d] our holding in Thomas."[2] Id. at 436. In deciding this issue, we reiterated

_____

[2]The legal issue was *not* whether States are categorically immune from participating in third-party discovery. Indeed, MDNR expressly disclaimed that it

our holding in Thomas that compelling MDNR to "prosecute FAG at a time and place dictated by the federal courts would violate the Eleventh Amendment" and also "undermines the two aims of the Eleventh Amendment: protection for a state's autonomy and protection for its pocketbook." Id. (quotations omitted).

But we nonetheless denied MDNR's mandamus petition, holding that the "issues implicated in *this* discovery dispute are far removed from Thomas. . . . MDNR has not shown how production of *these documents* infringes on the State of Missouri's autonomy or threatens its treasury." 105 F.3d at 436 (emphasis added). Thus, the statement at issue on this appeal -- that "[g]overnmental units are subject to the same discovery rules as other persons and entities having contact with the federal courts. . . . There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court," id. at 436, citing United States v. Procter & Gamble, 356 U.S. 677, 681(1958)[3] -- was not necessary to our conclusion or to resolution of the legal issue before us.

This statement, which Mick characterizes as the holding of Missouri DNR, was dicta -- "a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." Sanzone v. Mercy Health, 954 F.3d 1031, 1039 (8th Cir. 2020); see Municipality of San Juan v. Rullan, 318 F.3d 26, 28 n.3 (1st Cir. 2003). Though written categorically, the statement was not essential to our ultimate decision -- that the district court's denial of MDNR's motion to quash did not run afoul our decision in Thomas because the

_____

was presenting such an issue for our review in its Reply Brief, stating "FAG asserts MDNR is claiming that it has complete Eleventh Amendment immunity from participating in any discovery in federal litigation where it has not consented to be a party. That is not MDNR's argument."

[3]Important to note is that Procter & Gamble did not hold that the state is *always* subject to the same discovery rules as the other persons -- it merely held that the "Government *as a litigant* is, of course, subject to the rules of discovery." 356 U.S. at 681 (emphasis added).

non-disruptive third-party document subpoena did not implicate the two principal concerns in <u>Thomas</u>, state autonomy and protection of the state's treasury. After deciding *that specific* document subpoena was permissible under <u>Thomas</u>, any categorical statement regarding discovery and Eleventh Amendment immunity was dicta. Indeed, read categorically, the dicta in <u>Missouri DNR</u> seems inconsistent with the above-quoted passage that preceded it, which left open the question whether state sovereign immunity shields a State from *some* third-party discovery requests, namely, requests that infringe its autonomy or threaten its treasury.

Even more telling is what we *did not* do in <u>Missouri DNR</u>. We did not discuss whether discovery is a "suit" -- the essential inquiry in <u>Thomas</u> to determine whether forced joinder was barred under the Eleventh Amendment, and in <u>DeJordy</u> in concluding that a third-party subpoena was a "suit" for purposes of the Tribe's common law sovereign immunity. Thus, the question we must answer under both <u>Thomas</u> and <u>Missouri DNR</u> is whether *this* third-party Rule 30(b)(6) request infringes on NSP's autonomy or threatens its treasury. We conclude it does.

NSP made a strong showing that complying with the deposition subpoena infringes on the State's autonomy and threatens its treasury.[4] NSP determined, and Mick did not dispute, that NSP would need to produce five law enforcement officers to comply with the subpoena which asked NSP to produce the person most knowledgeable about the training that Wilkie and other NSP officers received on six distinct topics. As stated by NSP, each officer would spend about five hours preparing for their depositions; each deposition could last up to seven hours under Federal Rule of Civil Procedure 30(d); deponents may be required to travel in order to prepare for the videoconference deposition; and NSP is represented by state attorneys who would need to spend significant effort preparing and defending the depositions. Complying with this disruptive subpoena, NSP contended, could

---

[4]Mick disingenuously suggests that this argument is waived. NSP properly preserved this issue in its motion to quash and in its objections that the magistrate judge's order would infringe on its autonomy and threaten its treasury.

consume over 100 hours of taxpayer funded time. Mick did not contradict that estimate and did "not disagree that it is a lot of work to prepare five witness, and it will take time for agency counsel for this non-party to observe their depositions." Such a discovery request infringes on Nebraska's autonomy by subjecting it to the process of a judicial tribunal, interferes with public administration, and is unlike the simple document subpoena in Missouri DNR that was a narrow and minimally disruptive third-party request.

We reject NSP's argument for a converse categorical ruling -- that state sovereign immunity shields States from *all* third-party discovery subpoenas. As a panel, we are bound by Missouri DNR's holding that, at least in some instances, a State may not invoke its Eleventh Amendment immunity when refusing to comply with a non-disruptive third-party discovery subpoena. We note that other circuits addressing similar issues have adopted a categorical approach, holding that sovereign immunity bars third-party subpoenas against States. See, e.g., Jones, 49 F.4th at 512; Boron Oil Co. v. Downie, 873 F.2d 67, 71 (4th Cir. 1989) (federal sovereign immunity). These cases rely, in part, on Dugan v. Rank, where the Supreme Court stated the general rule "that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." 372 U.S. 609, 620 (1963) (cleaned up). When contested, we conclude these are fact-intensive inquiries that turn on the circumstances of a particular case and the third-party discovery subpoena at issue.

For the foregoing reasons we reverse the district court's interlocutory Order dated March 13, 2024. NSP's Motion that we take judicial notice of filings of record in Missouri DNR, a prior Eighth Circuit case, requires no response.

ERICKSON, Circuit Judge, concurring in the judgment.

I write separately to reiterate that under this Court's precedent, which has been criticized but not overruled, State entities are not exempt from complying with

-10-

discovery requests in a federal action.  <u>See Missouri DNR</u>, 105 F.3d at 436.  Here, NSP did not outright refuse to comply with all discovery requests, as it complied with Mick's subpoena for documents but declined to submit to a Rule 30(b)(6) deposition. As to the reasons for the denial of the Rule 30(b)(6) request, the topics Mick sought to explore were wide-ranging and broad, purportedly requiring the involvement of five NSP employees and six topics.  Because Mick neither disputed NSP's asserted burdens of compliance nor sought to narrow its request to reduce the burden, I concur in the judgment.

_____